[840 NYS2d 508]

MICHELLE ANDERSON, Appellant, v HOUSE OF GOOD SAMARITAN HOSPITAL et al., Respondents, et al., Defendants. (Appeal No. 1.)

Fourth Department, July 18, 2007

## APPEARANCES OF COUNSEL

*Carroll & Carroll Lawyers, P.C.*, Syracuse (*Woodruff L. Carroll* of counsel), for appellant.

*Amdursky, Pelky, Fennell & Wallen, P.C.*, Oswego (*Timothy J. Fennell* of counsel), for House of Good Samaritan Hospital, respondent.

*Conboy, McKay, Bachman & Kendall, LLP*, Watertown (*Stephen W. Gebo* of counsel), for Mercy Hospital of Watertown, respondent.

*O'Connor, O'Connor, Bresee & First, P.C.*, Albany (*George J. Hoffman, Jr.*, of counsel), for Maritza Santana, M.D., respondent.

## OPINION OF THE COURT

HURLBUTT, J.

In appeal No. 1, plaintiff, as limited by her brief, appeals from an order and judgment insofar as it dismissed the complaint in this medical malpractice action against House of Good Samaritan Hospital (Samaritan), Mercy Hospital of Watertown, doing business as Mercy Center for Health Services, doing business as Community Mental Health Center (Mercy), and Maritza Santana, M.D. (collectively, defendants). In appeal No. 2, plaintiff appeals from an order denying her motion to set aside the verdict pursuant to CPLR 4404. The appeal from the order must be dismissed because that order is subsumed in the final order and judgment (*see Woodhouse v Bombardier Motor Corp. of Am.*, 5 AD3d 1029 [2004]; *see also* CPLR 5501 [a] [1], [2]). Of the 18 instances of reversible error asserted by plaintiff to have occurred in the lengthy and complex trial, we conclude that only one requires reversal of the order and judgment insofar as appealed from. We agree with plaintiff that Supreme Court committed reversible error in giving an "error in judgment" charge to the jury, and we thus conclude that plaintiff is entitled to a new trial.

I

Plaintiff, the wife of an army officer stationed at Fort Drum in Jefferson County, presented herself at Fort Drum's Guthrie Clinic on October 5 and 7, 1993 with complaints of a headache, nausea, vomiting, numbness and tingling in her hands and feet, and dizziness. After conducting a physical examination and various laboratory tests, the examining physician concluded that plaintiff was suffering from, inter alia, an inflammation of the ear known as labyrinthitis, which the physician concluded was probably viral in origin. On October 11, 1993, plaintiff sought treatment for the same complaints in the emergency department at Samaritan. After an examination and various tests, including a CT scan of plaintiff's head, the emergency department physician concluded that the most likely cause of plaintiff's symptoms was a middle ear problem. When plaintiff returned to the Samaritan emergency department the next day, a second emergency department physician reviewed the records and test results from the previous day's visit, took a history, and performed an examination. That physician believed that plaintiff may have been suffering from depression and consulted with and referred plaintiff to a family practitioner at the Guthrie Clinic.

Plaintiff was next seen by a Fort Drum psychiatrist two days later, on October 14, 1993. Based on plaintiff's presentation and

history, that psychiatrist made a provisional diagnosis of major depression or depression with psychotic features, based on his assessment of plaintiff's appearance and recent history of numerous "stressors," including relocation to Fort Drum, an ectopic pregnancy requiring surgery, a miscarriage, and a recent dilatation and curettage procedure. That same day, plaintiff was brought to Mercy's outpatient clinic, where she was seen by a second psychiatrist, who was acting as the designee of the Director of Community Services for Jefferson County. The second psychiatrist determined, upon his examination of plaintiff, that she was unable "to safely survive in the community" due to her mental status, and applied for her involuntary admission to the psychiatric ward at Mercy, pursuant to Mental Hygiene Law § 9.37.

That application brought plaintiff under the care of defendant Maritza Santana, M.D., a psychiatrist employed by Mercy in the mental health unit operated by Samaritan but located in Mercy's facilities. Dr. Santana reviewed plaintiff's history and medical records, examined plaintiff's mental status, and approved plaintiff's involuntary admission pursuant to Mental Hygiene Law § 9.37. Believing plaintiff to be depressed, Dr. Santana formulated a differential diagnosis of "organic dementia, organic delusions, rule out major depression with psychotic symptoms, [and] rule out atypical psychosis." Plaintiff was admitted to the mental health unit on October 15, 1993 and remained there until she was transferred to Walter Reed Army Medical Center (Walter Reed) on October 23, 1993. The course of continued assessment and treatment included discontinuing plaintiff's medications to rule those out as a cause of plaintiff's physical symptoms, performing an upper GI series to rule out peptic ulcer disease, and prescribing Haldol, an antipsychotic medication. By the time plaintiff was transferred to Walter Reed, her condition had deteriorated to such a degree that she was catatonic.

At Walter Reed, after staff physicians performed a lumbar puncture, an MRI, and other neurological tests, plaintiff was diagnosed with acute disseminated encephalomyelitis, an inflammatory process in the brain secondary to a viral infection, and treatment was immediately commenced. Plaintiff presented evidence at trial that, as a result of the delay in making a diagnosis of her neurological disorder, she sustained various cognitive and other neurological deficits, and defendants controverted that evidence.

Over the objection of plaintiff, the court included the "error in judgment" charge in its jury instructions on medical malpractice (see PJI 2:150), stating: "A doctor is not liable for an error in judgment if he or she does what he or she decides is best, after careful examination, if it is a judgment that a reasonably prudent doctor would have made under the circumstances."

The jury returned a verdict finding that none of the defendants was negligent. This appeal, however, concerns only Samaritan, Mercy and Dr. Santana and, as previously noted, we agree with plaintiff that the court erred in giving the "error in judgment" charge. Because we cannot conclude that the error is harmless, we conclude that plaintiff is entitled to a new trial.

## II

The "error in judgment" charge emanates from the 1898 decision of the Court of Appeals in *Pike v Honsinger* (155 NY 201 [1898]). There, in reversing a judgment in a malpractice action that directed a verdict in favor of the defendant, the Court wrote that physicians are bound to possess that degree of learning and skill ordinarily possessed by those practitioners in the same locality, and that they must use both "reasonable care and diligence" and their "best judgment" in rendering care to patients (*id.* at 209). Further, the Court wrote that "[t]he rule requiring [doctors] to use [their] best judgment does not hold [them] liable for a mere error of judgment, provided [they do] what [they] think[ ] is best after careful examination" (*id.* at 210).

In *Spadaccini v Dolan* (63 AD2d 110 [1978]), the First Department explained that "[a]n error [in] judgment charge is appropriate in a case where a doctor is confronted with several alternatives and, in determining appropriate treatment to be rendered, exercises his [or her] judgment by following one course of action in lieu of another" (*id.* at 120). We cited and followed *Spadaccini* in *Martin v Lattimore Rd. Surgicenter* (281 AD2d 866 [2001]). In that part of the *Martin* decision that is particularly analogous here, involving the allegation that the defendant physician had failed to obtain an X ray after the plaintiff patient had "exhibited classic symptoms of a bowel obstruction," we noted that the defendant physician testified that he would have ordered an X ray had he suspected a bowel obstruction and that the defendant physician's expert testified that the defendant physician's "assessment . . . was reasonable" (*id.* at 867). We therefore concluded that "[n]o reasonable

view of the evidence would support a finding that defendant [physician] considered and chose among medically acceptable alternative courses of treatment" (*id.*).

The Court of Appeals cited *Spadaccini* and *Martin* with approval and followed the reasoning of those cases in its decision in *Nestorowich v Ricotta* (97 NY2d 393 [2002]). The alleged malpractice in *Nestorowich* did not involve a misdiagnosis or a failure to diagnose but, rather, it involved the accidental ligation of the renal artery of the plaintiff's decedent (*see id.* at 396-397). The Court concluded that it was improper to give an "error in judgment" charge "absent a showing that a doctor has chosen one of two or more medically acceptable alternative treatments or techniques" (*id.* at 396), although the Court determined that the error in giving the charge in that case was harmless. Where no such choice has been made, "a doctor may be liable only if the doctor's treatment decisions do not reflect his or her own best judgment, or fall short of the generally accepted standard of care" (*id.* at 399).

Here, plaintiff neither pleaded nor offered any evidence that Dr. Santana failed to use her best judgment. Instead, plaintiff's theory was that Dr. Santana failed to adhere to accepted medical standards, and thus was negligent, in failing to discern from plaintiff's history and mental status examination that plaintiff should be referred to a neurologist for assessment and treatment of a neurological disorder. Plaintiff's expert psychiatrist opined that plaintiff's history and symptoms, as presented to Dr. Santana on and after October 15, 1993, demonstrated "a very serious neurological problem that needed to be addressed urgently," and that there was "no basis" on which to diagnose a mental illness.

Dr. Santana did not testify at trial that she made a choice between or among medically acceptable alternatives. Rather, she testified repeatedly that she relied on the previous Guthrie Clinic and emergency department assessments of plaintiff's physical status, including plaintiff's neurological status. Moreover, while Dr. Santana included organic brain disease as part of her differential diagnosis, she was more concerned with ruling out the medications taken by plaintiff as a possible cause of her physical symptoms. Dr. Santana also relied on a consult by a family practitioner from the Guthrie Clinic on October 18, 2003.

The expert psychiatrist called by Dr. Santana also did not testify that she had made a choice between or among medically

acceptable alternatives. He simply opined that her assessment of plaintiff's condition was appropriate and that there was no need for a neurological consultation before October 20, 1993, the day on which Dr. Santana decided to transfer plaintiff for a neurological consult. The expert psychiatrist called by Mercy likewise made no reference to acceptable alternative choices. His testimony was that Dr. Santana exercised her "clinical judgment" and that the standard of care did not require a neurological assessment.

Defendants contend on appeal, as they did at trial, that the entire course of Dr. Santana's care of plaintiff entailed the exercise of medical judgment and that the "error in judgment" charge therefore was properly given. That contention, however, reflects defendants' misperception of the rationale for the holdings in *Nestorowich*, *Martin* and *Spadaccini* that the charge is not appropriate unless there is evidence that the defendant "has chosen one of two or more medically acceptable alternative treatments or techniques" (*Nestorowich*, 97 NY2d at 396). Every instance of patient care by a physician, and particularly the formulation of a diagnosis, entails the exercise of medical judgment. It is for that very reason that the courts have concluded that, where, as here, there is no allegation that the defendant physician failed to use his or her best judgment, the only issue of fact is whether the physician's assessment or treatment of the patient fell short of the medically accepted standard of care. That being the case, an instruction that the physician "is not liable for an error in judgment if [he or she] does what [he or she] decides is best," even if accompanied by the "reasonably prudent doctor" language (PJI 2:150), creates a risk that a jury will find that, because a physician exercised his or her best judgment, there can be no liability despite a failure to adhere to generally accepted standards of care (*see Nestorowich*, 97 NY2d at 399-400). We therefore conclude that the court erred in giving the "error in judgment" charge.

We further conclude that the error cannot be deemed harmless. Unlike the circumstances in *Nestorowich*, where the alleged malpractice involved an errant ligation rather than any exercise of medical judgment (*see id.* at 400), here the primary issue at trial was whether Dr. Santana deviated from accepted standards of care in the course of making medical judgments with respect to plaintiff's condition. Indeed, there were repeated references to the exercise of medical judgment throughout the trial, including in the opening and closing statements of counsel,

as well as in the testimony. We are therefore constrained to conclude that plaintiff is entitled to a new trial.

### III

In light of our determination, we briefly address certain of plaintiff's remaining contentions in the interest of judicial economy (*see generally Foster v Spevack*, 198 AD2d 892, 894 [1993]). As a preliminary matter, however, we note that plaintiff has not preserved for our review her contention that the court erred in giving a contributory negligence charge, and we therefore do not address that contention (*see Rivera v Eastern Paramedics*, 267 AD2d 1029, 1030 [1999]; *see also* CPLR 4110-b). In addition, given our determination to grant a new trial based on a legal error, there is no need to address plaintiff's contentions with respect to the weight of the evidence.

■ Turning to the preserved issues, we disagree with plaintiff that the court erred in striking the testimony and letter of the Deputy Director of the Central New York Region of the New York State Office of Mental Health concerning his policy directive that hospitals must, without exception, perform a medical review in an emergency room before confining a patient in a psychiatric ward. The record is clear that the Deputy Director's policy directive concerned the admission of patients pursuant to Mental Hygiene Law § 9.39 and, here, plaintiff was admitted to a psychiatric ward pursuant to section 9.37. In any event, the purpose of the testimony and letter was to establish the illegality of plaintiff's admittance to the mental health unit. That was not alleged in the original complaint, however, and we affirmed the order denying plaintiff's motion for leave to amend the complaint to include it (*Anderson v House of Good Samaritan Hosp.*, 5 AD3d 1055 [2004]). For a similar reason, we reject plaintiff's contention that the court erred in failing to charge the jury pursuant to Mental Hygiene Law § 9.37. Plaintiff sought to establish the alleged violation of that statute as a basis for liability against defendants, but our decision in the prior appeal established that plaintiff could not seek relief based on that alleged violation (*Anderson*, 5 AD3d 1055 [2004]).

We reject plaintiff's further contention that the court erred in failing to charge the jury with respect to Mental Hygiene Law § 33.03 (a) and various sections of the New York Codes, Rules and Regulations pertaining to the care of patients in

psychiatric facilities. The statute and any of those regulations that were possibly relevant set forth only general standards of care that would simply mirror the charge concerning the duty to exercise reasonable care in the diagnosis and treatment of plaintiff (*see generally Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 504-505 [1993]; *Gogatz v New York City Tr. Auth.*, 288 AD2d 115, 116 [2001]; *cf. Green v Downs*, 27 NY2d 205, 207 [1970]; *Love v New York City Hous. Auth.*, 251 AD2d 553 [1998]).

We also reject plaintiff's contention that the court erred in refusing to give an amnesia charge (*see* PJI 1:62). There was no evidence that plaintiff's amnesia with respect to the events in question was caused by the conduct of any defendant (*see Sawyer v Dreis & Krump Mfg. Co.*, 67 NY2d 328, 335 [1986]; *McGuire v Laier*, 281 AD2d 401 [2001]; *see also Zi Guang v State of New York*, 263 AD2d 745, 747 [1999]). Although we agree with plaintiff that the court erred in refusing to charge the jury that any negligence on the part of the Fort Drum physicians who treated plaintiff was irrelevant to the case, we conclude that the error is harmless. Plaintiff was not prejudiced by the court's refusal to give that charge inasmuch as the negligence of the Fort Drum physicians was not an issue at trial and was not referenced on the verdict sheet.

We reject plaintiff's contention that the court should have stricken the testimony of defendants' various experts. Any deficiencies in the specific expertise of the witnesses went to the weight of the testimony, not its admissibility (*see Gordon v Tishman Constr. Corp.*, 264 AD2d 499, 502 [1999]). We also conclude that defendants' expert disclosure statements were sufficient (*see* CPLR 3101 [d] [1] [i]; *Barrowman v Niagara Mohawk Power Corp.*, 252 AD2d 946, 946-947 [1998], *lv denied* 92 NY2d 817 [1998]; *Krygier v Airweld, Inc.*, 176 AD2d 700 [1991]).

Contrary to plaintiff's further contention, the Army civilian referral form was properly received in evidence as part of the certified hospital record of Mercy (*see generally* CPLR 2306, 4518 [c]; *Wilson v Bodian*, 130 AD2d 221, 231 [1987]). Moreover, the court did not err in refusing to redact that portion of the referral form reciting that plaintiff had been "medically cleared." The document in its entirety was not offered for the truth of its contents but, rather, it was offered as information reasonably relied on by Dr. Santana in assessing plaintiff's condition (*see generally Matter of Bergstein v Board of Educ.,*

*Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318, 323-324 [1974]; *Murray v Weisenfeld*, 37 AD3d 432, 433-434 [2007]; *Bruce-Bishop v Jafar*, 302 AD2d 345 [2003]).

We reject plaintiff's contention that the court erred in precluding certain testimony of a guardian ad litem and her report. The court properly permitted the guardian ad litem to testify to her own observations with respect to plaintiff's impaired memory and cognitive functions and properly excluded testimony derived from interviews with third parties (*see generally Overseas Trust Bank v Poon*, 181 AD2d 762, 763 [1992]; Prince, Richardson on Evidence § 8-101 *et seq.* [Farrell 11th ed]). The court also properly refused to admit in evidence the Social Security record of plaintiff's employment history and the decision of the Administrative Law Judge (ALJ) awarding plaintiff disability benefits. Neither document was properly authenticated or certified (*see* CPLR 4518 [c]; *see generally* CPLR 4520, 4540; Prince, Richardson on Evidence §§ 9-201—9-204) and, in any event, the determination of the ALJ would not be admissible in this action.

The court properly ruled that neither Samaritan nor Mercy could be held vicariously liable for any negligence of defendant Dr. David T. Gavan, a former defendant. We previously affirmed an order granting his motion for summary judgment dismissing the complaint against him as time-barred (*Anderson v House of Good Samaritan Hosp.*, 194 Misc 2d 171 [2002], *affd* 5 AD3d 1058 [2004], *lv denied* 3 NY3d 609 [2004]). Finally, we reject plaintiff's contention that the court erred in allowing the jury to apportion fault to Dr. Gavan. Although he was no longer a defendant, he was nevertheless someone to whom fault could have been assigned by the jury pursuant to CPLR 1601 (1) (*see DiCamillo v County of Nassau*, 293 AD2d 563, 564 [2002]; *Duffy v County of Chautauqua*, 225 AD2d 261, 266 [1996], *lv dismissed in part and denied in part* 89 NY2d 980 [1997]).

## IV

Accordingly, we conclude that the order and judgment insofar as appealed from should be reversed, plaintiff's posttrial motion granted in part, the verdict set aside in part, the complaint against defendants reinstated and a new trial granted.

SCUDDER, P.J., LUNN, GREEN and PINE, JJ., concur.

It is hereby ordered that the order and judgment insofar as appealed from be and the same hereby is unanimously re-

versed, on the law, without costs, the posttrial motion is granted in part, the verdict is set aside in part, the complaint against defendants House of Good Samaritan Hospital, Mercy Hospital of Watertown, doing business as Mercy Center for Health Services, doing business as Community Mental Health Center, and Maritza Santana, M.D. is reinstated and a new trial is granted.