OPINION OF THE COURT
John M. Curran, J.
Defendants, Victoria Brooks, M.D. and Hong Yu, M.D. (physicians), have moved pursuant to CPLR 3212 for summary judgment dismissing plaintiffs complaint and all cross claims. Defendant, Erie County Medical Center Corporation (ECMC), also has moved for summary judgment pursuant to CPLR 3212 for an order dismissing the complaint against the hospital.
Factual Background
On August 6, 2006, Robert Wulbrecht (plaintiffs decedent, hereinafter referred to as Mr. Wulbrecht), was involved in a confrontation with the City of Buffalo police outside one of his rental properties. Plaintiff Nancy S. Wulbrecht (Mrs. Wulbrecht), Mr. Wulbrecht’s spouse, was informed by the police that she needed to take her husband to ECMC. Mrs. Wulbrecht did so. Early the next morning, Mr. Wulbrecht arrived home having been released by the hospital.
On August 9, 2006, Mr. Wulbrecht made a telephone call to his therapist, Dr. Jenkins, requesting a refill of his medications. Mr. Wulbrecht informed Dr. Jenkins that he had taken a handful of Valium because he was unable to sleep. Dr. Jenkins thereupon phoned the Town of Amherst police.
Mr. Wulbrecht was brought to ECMC by the police on August 9, 2006, at approximately 5:00 p.m. Mr. Wulbrecht was evaluated in the emergency department and then transferred to the Comprehensive Psychiatric Education Program (CPEP).
Mr. Wulbrecht was initially evaluated in the CPEP by nurse Julia Worczak and then by a psychiatric resident, Dr. Denise Giessert (an ECMC employee at the time). During that evaluation, Mr. Wulbrecht denied suicidal intent, stating that he had taken the pills because he needed to sleep. Dr. Giessert was of the opinion that Mr. Wulbrecht required admission to the psychiatric unit for “stabilization and continued lethality assessment” and should be placed on “Level I observation,” requiring that he be checked every 30 minutes. These checks included looking into the room to observe the patient and his demeanor, and checking the room for dangerous objects. After performance of such a check, a nurse initials a form stating that the patient *810 was observed. Defendant Dr. Brooks, the attending psychiatrist, reviewed and approved Dr. Giessert’s notes and orders.
Upon admission, Mr. Wulbrecht came under the treatment of defendant Dr. Yu, another attending psychiatrist. Mr. Wulbrecht also denied to Dr. Yu any suicidal intent and repeatedly voiced his desire to go home. Dr. Yu retained the level I observance and ordered the 30-minute checks to be continued. That decision was based in part on the doctor’s conversation with Mr. Wulbrecht and a review of the patient’s file, including the report of Dr. Giessert and Dr. Brooks.
The 30-minute checks continued throughout the evening of August 10, 2006 and in the early morning hours of August 11, 2006. Nurse Joyce Paige performed a check of Mr. Wulbrecht at 6:30 a.m. on August 11, 2006, at which time Mr. Wulbrecht was apparently stable. At approximately 6:40 a.m. that day, while performing rounds before his shift was to start at 7:00 a.m., nurse Scott Comstock entered Mr. Wulbrecht’s room and found him hanging from the back of the bathroom door by a bed sheet. Although CPR was performed, Mr. Wulbrecht could not be resuscitated. Plaintiff commenced this psychiatric malpractice action on August 29, 2007.
Parties’ Contentions
Plaintiff claims that the defendants were negligent primarily in the following respects: (1) failure to properly evaluate and heed Mr. Wulbrecht’s symptoms and behavior and treat his suffering; (2) failure to assess Mr. Wulbrecht’s history and to learn specifics about his psychiatric history from his family and treating psychiatrists or past records in evaluating his suicide risk; (3) failure to order and implement an appropriate suicide watch and suicide measures; (4) failure to follow their own and others’ treatment plans; and (5) failure to prevent Mr. Wulbrecht’s suicide. Plaintiffs amended verified bill of particulars for the physicians are attached to the physicians’ motion papers as exhibit D.
The defendant physicians have moved for summary judgment on the grounds that as psychiatrists, their professional judgment is entitled to deference under the law and that the medical judgment they exercised in connection with Mr. Wulbrecht’s treatment is not subject to jury scrutiny (see e.g. Topel v Long Is. Jewish Med. Ctr., 55 NY2d 682 [1981]; Betty v City of New York, 65 AD3d 507 [2d Dept 2009]; Seibert v Fink, 280 AD2d 661 [2d Dept 2001]). The defendant physicians also contend *811 that there is no causal connection between the physicians’ actions/inactions and Mr. Wulbrecht’s suicide (see e.g. Bickford v St. Francis Hosp., 19 AD3d 344 [2d Dept 2005], lv denied 5 NY3d 710 [2005]; Amsler v Verrilli, 119 AD2d 786 [2d Dept 1986]).
ECMC, also relying on Topel, argues that it is entitled to summary judgment because the record demonstrates that its employees followed all of the orders issued by Mr. Wulbrecht’s attending physicians and therefore is not subject to direct liability. ECMC also argues that general negligence standards should not apply because plaintiff is alleging that ECMC failed to exercise due care in its professional skill and judgment, which sounds in malpractice (see e.g. Edbauer v Harris Hill Nursing Facility, 245 AD2d 1103 [4th Dept 1997];. Smee v Sisters of Charity Hosp. of Buffalo, 210 AD2d 966 [4th Dept 1994]).
Motion Standards
On a motion for summary judgment, the moving party bears the initial burden of making a prima facie showing of entitlement to judgment as a matter of law after tendering evidence sufficient to eliminate any material issue of fact from the case (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Defendant has the burden of affirmatively demonstrating the merits of its defense and does not meet its burden by merely noting gaps in the plaintiff’s proof (see Edwards v Arlington Mall Assoc., 6 AD 3d 1136, 1137 [4th Dept 2004]). Until the movant establishes its entitlement to judgment as a matter of law, the burden does not shift to the opposing party to raise an issue of fact and the motion must be denied (see Loveless v American Ref-fuel Co. of Niagara, 299 AD2d 819, 820 [4th Dept 2002]). The courts are required upon a defendant’s motion for summary judgment to view the evidence in the light most favorable to the plaintiff (see Evans v Mendola, 32 AD3d 1231, 1233 [4th Dept 2006]; Esposito v Wright, 28 AD3d 1142, 1143 [4th Dept 2006]). However, once the moving party establishes its entitlement to judgment through the tender of admissible evidence, the burden shifts to the nonmoving party to raise a triable issue of fact (see Gern v Basta, 26 AD3d 807, 808 [4th Dept 2006], lv denied 6 NY3d 715 [2006]).
These standards are of course equally applicable to motions for summary judgment in medical malpractice actions. “[0]n a motion for summary judgment, a defendant doctor has the initial burden of establishing the absence of any departure from *812 good and accepted medical practice or that the plaintiff was not injured thereby” (Williams v Sahay, 12 AD3d 366, 368 [2d Dept 2004]). In opposition, a plaintiff “must submit material or evidentiary facts to rebut the physician’s prima facie showing that he or she was not negligent, in treating the plaintiff” (DiMitri v Monsouri, 302 AD2d 420, 421 [2d Dept 2003]).
As the Court of Appeals held 25 years ago:
“The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad, 64 NY2d at 853 [citations omitted].)
In Winegrad, the Court reversed the grant of summary judgment in favor of the defendant physicians in a medical malpractice case on the grounds that the papers submitted in support of the defendants’ motion contained only “bare conclusory assertions” containing “no factual relationship to the alleged injury” (64 NY2d at 853).
For a defendant to meet its burden on a motion for summary judgment in a medical malpractice action, the proof submitted must be more than conclusory assertions that a defendant’s actions were in keeping with accepted medical standards (Seefeldt v Johnson, 13 AD3d 1203 [4th Dept 2004]). “[0]nly when a defendant refutes by specific factual reference the allegations of malpractice made by the plaintiff does the burden of going forward with the proof shift to the plaintiff to produce evidentiary proof in admissible form establishing the existence of material questions of fact” (Ritt v Lenox Hill Hosp., 182 AD2d 560, 562 [1st Dept 1992] [internal quotation marks and citations omitted]).
The Appellate Division has routinely directed denial of motions for summary judgment in medical malpractice actions on the basis that the movants failed to carry their burden in the first instance because the movants did not address the factual allegations set forth in the plaintiffs bill of particulars or the facts contained in the medical records (Cham v St. Mary’s Hosp. of Brooklyn, 72 AD3d 1003 [2d Dept 2010]; Perre v Vassar Bros. Hosp., 52 AD3d 670 [2d Dept 2008]; Wasserman v Carella, 307 AD2d 225 [1st Dept 2003]; Cicolello v Limb, 216 AD2d 434 [2d Dept 1995]; Muscatello v City of New York, 215 AD2d 463 [2d Dept 1995]; Ritt, 182 AD2d at 561).
*813 Analysis
In support of their motion, the physicians have submitted the pleadings, the bill of particulars, excerpts from their own deposition transcripts, excerpts from the deposition transcripts of other witnesses and an expert’s affidavit. The defendant physicians did not submit their own affidavits.
The expert’s affidavit consists of 11 paragraphs set forth in approximately two pages containing the following conclusions:
“9. There is no causal connection between the level of checks ordered by Dr. Victoria Brooks, and continued by Dr. Hong Yu, and the plaintiff-decedent’s suicide. The plaintiff-decedent was observed twice in ten minutes and was able to commit suicide in that short time.
“10. It is my opinion, to a reasonable degree of medical certainty, that the plaintiff-decedent did not present with the predictors of suicide risk necessary to order 1:1 observation.
“11. Based upon the above facts and my knowledge and experience as a board certified psychiatrist, it is my opinion, with a reasonable degree of medical certainty, that the diagnosis rendered by Dr. Victoria Brooks and Dr. Hong Yu was correct, and that their care and treatment of Robert Wulbrecht had no causal relationship to his suicide.”
The expert affidavit submitted by the defendant physicians is conclusory and does not address any of the issues raised by plaintiff in the bill of particulars attached to the motion papers. The expert’s affidavit does not even mention whether the expert reviewed the bill of particulars. Moreover, while the expert affidavit refers generally to Mr. Wulbrecht’s course of treatment, it does not address any of the issues raised by the plaintiff in the complaint or in the bill of particulars. The expert’s affidavit also makes no effort to relate the facts in the medical record to the alleged malpractice except in the most general of terms.
Despite the deficiencies of the expert’s affidavit submitted in support of the physicians’ motion for summary judgment, there is nothing in the record evidencing any argument by the plaintiff objecting to the sufficiency of that affidavit. Nevertheless, as the above-cited decisions governing standards on motions for summary judgment make clear, the court is required to adhere to those standards upon every such motion. The Appellate Division has held that this is true even if the opposing party defaults *814 on a motion for summary judgment (Liberty Taxi Mgt., Inc. v Gincherman, 32 AD3d 276, 277 [1st Dept 2006]). Further, this is not a situation involving a technical evidentiary issue which the court can deem waived through the failure to object (see e.g. Dowling v Mosey, 32 AD3d 1190 [4th Dept 2006]). Thus, the court must evaluate on its own the sufficiency of the papers submitted in support of a motion for summary judgment even in the absence of an argument to that effect by the nonmoving party.
Based on the conclusory nature of the expert’s affidavit submitted in support of the physicians’ motion for summary judgment, the court is compelled to deny that motion. Still, the physicians’ argument seems to be based at least in part on a theory which might not require expert testimony.[1] It appears that the physicians are taking the position that their professional judgment is so insulated from inquiry under Topel that expert testimony in support of their motion is unnecessary.
Defendant physicians argue for the broad proposition that “a psychiatrist’s exercise of professional medical judgment is not subject to jury scrutiny” (supplemental mem of law at 3). According to this argument, so long as the physicians “performed a competent examination and evaluation process, they cannot be held liable for errors in professional judgment” (supplemental mem of law at 3-4). Thus, consistent with this argument, the physicians assert that they are entitled to summary judgment because the record reflects that Dr. Brooks reviewed Mr. Wulbrecht’s history, spoke with his wife, and evaluated the patient; and Dr. Yu reviewed the emergency room record and evaluated Mr. Wulbrecht.
Although the physicians have used the expert’s affidavit discussed above to support their motion, their argument regarding the legal standard by which a psychiatrist’s professional medical judgment should be evaluated is not solely reliant on their expert’s opinion. The physicians appear to be taking the position that their professional medical judgment should be insulated or immunized so long as there is a basis in the record that a competent evaluation was made. The physicians’ argument is essentially that expert testimony (whether their own or *815 from another qualified physician) regarding compliance with a generally accepted standard of care is unnecessary for a psychiatrist so long as the record in fact demonstrates a competent examination and evaluation process. Significantly, the physicians have not offered their own expert testimony to assert that they complied with generally accepted standards of care. Their expert’s affidavit also contains no testimony regarding compliance with generally accepted standards of care but refers instead solely to the expert’s conclusion that “the diagnosis rendered by [the physicians] was correct” (expert affidavit H 11).
The language from a considerable number of factually similar cases lends support to the physicians’ argument. In Topel, the Court of Appeals affirmed the setting aside of a jury verdict in favor of the plaintiff by concluding that the issue in the case “was a matter of professional judgment for which [the] defendant doctor cannot be held” (55 NY2d at 684). There, plaintiff argued that plaintiffs decedent, who committed suicide, should have been under constant observation rather than observed at 15-minute intervals as the doctor ordered. The court held:
“While the line between medical judgment and deviation from good medical practice is not easy to draw, we conclude that more is required to make out a prima facie case against a doctor than was presented by plaintiffs expert testimony. To hold otherwise on the basis of expert opinion which does not negate the factors, listed above, upon which the attending physician based his judgment is to subject every judgment made by a doctor, no matter what its basis, to the second guess of a jury.” (55 NY2d at 684-685 [citations omitted].)
The Court in Topel cited with approval its previous affirmance of the Appellate Division in Centeno v City of New York (48 AD2d 812 [1st Dept 1975], affd 40 NY2d 932 [1976]). In Centeno, the Appellate Division, as affirmed by the Court of Appeals, held:
“Disagreement between professional experts does not in these circumstances provide the basis for holding that a prima facie case of malpractice was presented requiring jury consideration . . . The prediction of the future course of a mental illness is a professional judgment of high responsibility and in some instances it involves a measure of calculated risk. If a liability were imposed on the physician or the State each time the prediction of future course *816 of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated.” (48 AD2d at 813, citing Taig v State of New York, 19 AD2d 182,183 [3d Dept 1963].)
The Appellate Division in Centeno affirmed dismissal of the plaintiff’s claim asserting that plaintiff’s decedent, who ultimately committed suicide, should not have been released from Bellevue Hospital. The Court in Centeno also adhered to Taig’s concern about imposing liability upon psychiatrists for the discharge of patients with mental illnesses deterring the release of such patients, thereby impeding their rehabilitation (48 AD2d at 813).
The Court of Appeals decisions in Centeno and Topel were accompanied by strong dissents from Judge Fuchsberg. In Topel, Judge Fuchsberg argued that Appellate Division’s decision in Centeno, upon which the majority’s decision relied, “ran completely counter to the developed doctrine which has prevailed in this area of law from the seminal Pike case down” (55 NY2d at 693, citing Pike v Honsinger, 155 NY 201, 211 [1898]). Further, Judge Fuchsberg condemned the majority’s decision for
“[t]his sanctification of medical judgment per se, irrespective of whether it is good, bad or indifferent; or whether it accords with or is opposed to good medical practice; or whether it results from want of requisite knowledge or skill; or whether it flows from a failure to make a diligent medical evaluation” (55 NY2d at 693).
The language used by the majority in Topel, which seems to give unique deferential treatment to the professional medical judgment of psychiatrists, has been reiterated in various forms by the Court of Appeals (Fiederlein v City of New York Health & Hosps. Corp., 80 AD2d 821, 822 [1st Dept 1981], affd 56 NY2d 573 [1982] [“(i)n every medical judgment there is a risk of error, but mere error in medical judgment does not give rise to a viable claim of medical malpractice”]; Huntley v State of New York, 62 NY2d 134, 137 [1984] [“and an error in such judgment would not have given rise to liability for malpractice”]; Schrempf v State of New York, 66 NY2d 289, 295-296 [1985] [“Because psychiatry is not an exact science, decisions with respect to the proper course of treatment often involve a calculated risk and *817 disagreement among experts as to whether the risk was warranted or in accord with accepted procedures. These circumstances necessarily broaden the area of professional judgment to include treatments tailored to the particular case, where the ‘accepted procedure’ does not take into account factors which the treatment physician could reasonably consider significant” (citations omitted)]), as well as in the decisions of the Appellate Division (Bell v New York City Health & Hosps. Corp., 90 AD2d 270, 279 [2d Dept 1982] [“It is a well-established principle of medical jurisprudence that no liability obtains for an erroneous professional medical judgment. This rule of course is applicable to the practice of psychiatry” (citations omitted)]; Darren v Safier, 207 AD2d 473, 474 [2d Dept 1994] [“Even if Dr. Safier had made an error in judgment, that is not a basis for the imposition of liability”]; O’Sullivan v Presbyterian Hosp. in City of N.Y. at Columbia Presbyt. Med. Ctr., 217 AD2d 98, 100 [1st Dept 1995] [“When a psychiatrist chooses a course of treatment, within a range of medically accepted choices, for a patient after a proper examination and evaluation, the doctrine of professional medical judgment will insulate such psychiatrist from liability. The psychiatrist, as the general physician, may not be held liable for a mere error in professional judgment”]; Weinreb v Rice, 266 AD2d 454, 455 [2d Dept 1999]; Seibert, 280 AD2d at 661; Matter of Rivera v State of New York, 287 AD2d 318 [1st Dept 2001]).
The view that psychiatrists are entitled to a unique form of immunity from the general standards of medical malpractice has been recognized by other than New York courts (O’Shea v United States, 623 F Supp 380, 384 [ED NY 1985] [“New York jurisprudence makes it clear that the professional medical judgment immunity extends to out-patient cases and other facets of the admissions decision”]; Littleton v Good Samaritan Hosp. & Health Ctr., 39 Ohio St 3d 86, 96, 529 NE2d 449, 457-458 [1988]). It is therefore understandable that the physicians here have argued that psychiatrists are insulated from liability if they can establish that they performed a competent examination and evaluation of the patient, irrespective of compliance with medically accepted standards of care.
The language used by the courts in the above cases raises a number of questions. For example, are psychiatrists afforded a different legal standard when they exercise their professional medical judgment? If so, should the trial courts devise a special jury instruction which is different from the one provided by the *818 Committee on Pattern Jury Instructions (PJI 2:150)? Because the decisions above employ language seemingly protecting a psychiatrist’s error in judgment, is the professional medical judgment of such physicians always entitled to the “error in judgment” standard (1 NY PJI3d 2:150, at 816-818, 832-833)? Assuming instead the same legal standard is employed for psychiatrists as for any other physician, how does a court evaluate whether the psychiatrist has sufficiently complied with the “best judgment rule” (Nestorowich v Ricotta, 97 NY2d 393, 398 [2002]), as contained in PJI 2:150, to be entitled to summary judgment? Must a psychiatrist moving for summary judgment submit expert testimony (from either the defendant psychiatrist or another qualified physician) to demonstrate conformity with established standards of medical care? Or, is it sufficient to shift the burden to the plaintiff on the motion for the psychiatrist to submit only medical records and factual testimony showing the extent of the psychiatrist’s examination and evaluation process, such as has been done here?
This court’s answer to all of the above questions is essentially that psychiatrists are not always entitled to the “error in judgment” standard and are otherwise governed by the same legal standard applicable to all physicians. Additionally, to make a prima facie showing on a motion for summary judgment, a psychiatrist must submit admissible evidence demonstrating conformity with established standards of medical care so that the court can properly analyze whether the psychiatrist’s professional judgment was in fact based on a competent examination and evaluation process.
These conclusions are premised on this court’s reading of the Court of Appeals decision in Nestorowich, the Fourth Department’s decision in Anderson v House of Good Samaritan Hosp. (44 AD3d 135 [4th Dept 2007]), and to a somewhat lesser extent, the Second Department’s decision in Bell (90 AD2d 270 [1982]). In Nestorowich, a case not involving a psychiatrist, the Court addressed the proper circumstances in which the “error in judgment” charge may be given by a trial court in a medical malpractice action. The Court commenced its analysis of the issue by reiterating the appropriate legal standard in all medical malpractice actions:
“The prevailing standard of care governing the conduct of medical professionals has been a fixed part of our common law for more than a century. The Pike standard demands that a doctor exercise *819 that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where [the doctor] practices. Although malpractice jurisprudence has evolved to accommodate advances in medicine, the Pike standard remains the touchstone by which a doctor’s conduct is measured and serves as the beginning point of any medical malpractice analysis.
“A doctor is charged with a duty to exercise due care, as measured against the conduct of his or her own peers — the reasonably prudent doctor standard. Implicit within the concept of due care is the principle that doctors must employ their best judgment in exercising . . . skill and applying [their] knowledge. The notion of best judgment assures conformance with the prevailing standard of care and accepted medical practice.” (97 NY2d at 398 [emphasis added; internal quotation marks and citations omitted].)
The Court further discussed the need to measure a doctor’s conduct “by an objective reasonably prudent doctor standard” but recognized the application of collateral doctrines, such as the “error in judgment” doctrine (id.). On this basis, the Court concluded: “It follows, therefore, that a doctor may be liable only if the doctor’s treatment decisions do not reflect his or her own best judgment, or fall short of the generally accepted standard of care” (97 NY2d at 399 [citations omitted]). On the basis of its analysis of the Pike standard, the Court concluded that the “error in judgment” charge had limited application and is appropriate only in instances where the parties present evidence of a choice between or among medically acceptable alternatives or diagnoses (97 NY2d at 399-400).
Nestorowich demonstrates that allegations of a physician failing to use his or her “best judgment” necessitate some evidence as to whether or not the physician conformed “with the prevailing standard of care and accepted medical practice” (97 NY2d at 398). In the absence of evidence that there has been such conformance with the prevailing standard of care and accepted medical practice, the court is unable to competently make that judgment on its own. This is not to say that expert opinion testimony will be necessary in every situation. Rather, some reasonable articulation of the governing standards of care and acceptable medical practices is necessary whether in moving for summary judgment or opposing such a motion. Conclusory *820 statements of conformance with or violation of a standard of care, without a description as to which practices are considered part of that standard, are insufficient.
The court recognizes that its conclusions may be viewed as contrary to the broad language set forth in Topel and Centeno. However, this court concludes that Topel must be read in light of the later Court of Appeals decision in Nestorowich which makes clear that the “best judgment” rule is generally applicable to all medical malpractice actions whereas the “error in judgment” rule is applicable only in a limited number of instances. There is nothing in Topel or any Court of Appeals decision indicating that the Court altered the “best judgment” rule for psychiatrists. In other words, Topel should be understood as an application of the “best judgment” rule and not the “error in judgment” rule explained by Nestorowich.[2] To the extent that court decisions rendered before Nestorowich use language which seems to employ the “error in judgment” rule, they should generally be understood as involving the “best judgment” rule, except for discharge decisions made as a matter of professional medical judgment. In cases involving a decision to discharge a patient with a mental illness and/or suicidal tendencies, it is conceivable the “error in judgment” standard would be appropriate assuming there is compliance with Nestorowich regarding a decision made between or among medically viable alternatives.[3]
The Fourth Department’s decision in Anderson underscores this point. There, the Court concluded that it was improper for the trial court to have given the “error in judgment” charge to the jury because there was “no allegation that the defendant physician failed to use his or her best judgment,” but that “the only issue of fact [was] whether the physician’s assessment or treatment of the patient fell short of the medically accepted *821 standard of care” (44 AD3d at 141). Accordingly, where the plaintiff does not allege that the defendant physician failed to exercise his or her best judgment, and the defendant physician does not testify that he or she selected between or among various medically viable alternative treatments, the courts should not look to the “error in judgment” rule but rather to the allegations of the treatment having fallen short of the “medically accepted standard of care.”
These conclusions are consistent with the Second Department’s decision in Bell. The Court there began its discussion by recognizing the “well-established principle of medical jurisprudence that no liability obtains for an erroneous professional medical judgment” and that this rule is “of course . . . applicable to the practice of psychiatry” (90 AD2d at 279). Further, in analyzing the case law involving psychiatric malpractice, the Court observed that the courts look to whether “there was something less than a professional medical determination” (90 AD2d at 282). Therefore, Bell appears to confirm that the legal standard for a psychiatrist is the same as for physicians in general and that the standard necessarily looks to whether the physician’s professional medical judgment was less than the medically accepted standard of care.
Because this case of alleged psychiatric malpractice comes before the court on a motion for summary judgment, it is the physicians’ burden to establish their entitlement to judgment as a matter of law. There is nothing in the complaint or in the bill of particulars alleging that the psychiatrists failed to use their best judgment by selecting a more appropriate medically viable alternative treatment. Rather, the bill of particulars alleges that the examination and evaluation performed by the psychiatrists was less than the medically accepted standard of care. As a result, to succeed on the motion for summary judgment, the psychiatrists must demonstrate that their examination and evaluation conformed with the medically accepted standard of care. There is nothing in the deposition testimony from these psychiatrists, or in the expert affidavit attached to their motion papers, which provides any articulation, reasonable or otherwise, of the applicable standard of care and whether the examination and evaluation performed by the psychiatrists for Mr. Wulbrecht complied with that articulated standard. For these reasons, the psychiatrists’ motion for summary judgment must be denied not only because the expert’s affidavit is insufficient, but also because the record as a whole fails to demonstrate their entitlement to summary judgment as a matter of law.
*822 ECMC Motion
With regard to ECMC’s motion, “a hospital may not be held in damages for carrying out the course of treatment prescribed by a patient’s attending physician” (Topel, 55 NY2d at 684). In opposition to the motion (on which the hospital indisputably met its initial burden on this point), plaintiff offers ho evidence that the hospital or its employees failed to carry out the course of treatment prescribed by the attending physicians. Since the plaintiffs expert affidavit fails to state in detail how the actions of hospital staff deviated from the standard of care or proximately caused decedent’s injury and death, ECMC’s motion for summary judgment must be granted (Selmensberger v Kaleida Health, 45 AD3d 1435 [4th Dept 2007]). Plaintiffs argument that this case may rely upon general negligence standards alone is without merit (Edbauer, 245 AD2d at 1103; Smee, 210 AD2d at 966).

. While the physicians are allowed under the law to submit their own opinion testimony in support of their motion (Gargiulo v Geiss, 40 AD3d 811, 812 [2d Dept 2007]; Maust v Arseneau, 116 AD2d 1012 [4th Dept 1986]), they failed to submit any affidavits in support of their own motion and instead relied upon their deposition testimony.

. This conclusion is supported by the fact that the Court in Topel had the benefit of a full trial record upon which to evaluate the competing proof concerning the psychiatrist’s exercise of his best professional judgment. Additionally, there is nothing in the majority’s decision or in the dissent about the basis for the psychiatrist’s choice between 15-minute intervals and other treatment options.

. In Fallon v Loree, the Court cited to Centeno and Taig for the proposition that “[wjhere alternative procedures are available to a physician, any one of which is medically acceptable, a physician cannot be held liable for malpractice when he uses one of several acceptable techniques” (136 AD2d 956, 956 [4th Dept 1988]). This appears to be a classic statement of the “error in judgment” rule. Both Centeno and Taig were cases involving alleged liability for the discharge of a patient with a mental illness.