Rabideau v Weitz (2019 NY Slip Op 01480)





Rabideau v Weitz


2019 NY Slip Op 01480


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

527093

[*1]CURTIS RABIDEAU et al., Appellants,
v
ZEEV WOLF WEITZ et al., Respondents.

Calendar Date: January 9, 2019

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Rumsey, JJ.


Powers and Santola, LLP, Albany (Michael J. Hutter of counsel), for appellants.
Phelan, Phelan & Danek, LLP, Albany (Timothy S. Brennan of counsel), for Zeev Wolf Weitz, respondent.
O'Connor First, Albany (P. Baird Joslin Jr. of counsel), for David Holodak, respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeals (1) from a judgment of the Supreme Court (Kramer, J.), entered May 30, 2018 in Schenectady County, upon a verdict rendered in favor of defendants, and (2) from an order of said court, entered March 20, 2018 in Schenectady County, which denied plaintiffs' motion to set aside the verdict.
On February 17, 2014, plaintiff Curtis Rabideau presented to the emergency room complaining of double vision, as well a persistent headache that had lasted on and off since December 22, 2013, when he fell, hit his head and was knocked unconscious. A CT scan revealed that Rabideau was suffering from a subdural hematoma, and he ultimately underwent surgery to address his condition. The surgery was successful, however, the subdural hematoma had caused Rabideau to sustain permanent brain damage. Thereafter, Rabideau and his spouse, derivatively, commenced this medical malpractice action against defendant Zeev Wolf Weitz, Rabideau's primary care physician, and defendant David Holodak, a nurse practitioner employed by Weitz, alleging that they failed to properly diagnose and treat Rabideau during office visits on December 26, 2013 and February 3, 2014 and that such failures resulted in a delayed diagnosis of the subdural hematoma. The matter proceeded to a jury trial and, at the close of plaintiffs' proof, defendants separately moved to dismiss the causes of action against them. Supreme Court reserved decision and, following the close of all of the proof, dismissed all direct claims against Weitz, finding that, given the proof, he could be found liable only under a theory of respondeat superior. Supreme Court otherwise denied defendants' motions. Following deliberations, the jury returned a verdict in favor of defendants, specifically finding that Holodak did not deviate from good and accepted nursing practices during either of the office visits by not ordering a CT scan or referring Rabideau to a physician or an emergency department for further care. Supreme Court subsequently denied plaintiffs' motion to set aside the verdict. Plaintiffs appeal.
Plaintiffs first argue that Supreme Court should have granted their motion to set aside the verdict as being against the weight of the evidence. "A verdict may not be set aside on this basis 'unless the evidence so preponderated in favor of the moving party that it could not have been reached on any fair interpretation of the evidence'" (Prediletto v Syed, 166 AD3d 1456, 1457 [2018], quoting Killon v Parrotta, 28 NY3d 101, 107-108 [2016]; see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]). In a medical malpractice action, such as this one, the plaintiff bears the burden of proving by a preponderance of the evidence that the defendant deviated or departed from accepted medical practice and that such deviation or departure was a proximate cause of the plaintiff's injury (see Mazella v Beals, 27 NY3d 694, 705 [2016]; James v Wormuth, 21 NY3d 540, 545 [2013]; Valentine v Lopez, 283 AD2d 739, 741 [2001]).
To satisfy their burden at trial, plaintiffs relied on the testimony of, among other witnesses, three experts — James Tucker, a physician board certified in family medicine, Alan Segal, a neurologist, and Diane Meehan, a nurse practitioner. Both Tucker and Segal testified that a CT scan is required when, like Rabideau, a patient reports hitting his or her head and losing consciousness. Segal further opined that Rabideau's subdural hematoma had been caused by the fall, that it was "overwhelmingly likely" that the subdural hematoma would have been visible on a CT scan performed on December 26, 2013 and that Rabideau would have sustained less brain damage, if any, had his subdural hematoma been treated earlier. Meehan similarly testified that, given Rabideau's report that he had hit his head and lost consciousness, Holodak should have ordered a CT scan and referred Rabideau to a physician for further care and treatment and that the failure to take these actions at the December 2013 and February 2014 office visits constituted deviations from the standard of care.
In response, defendants presented, among other evidence, expert testimony from Jeffrey Oppenheim, a neurosurgeon, Joel Bartfield, a physician board certified in emergency medicine, and Alexandra Schneider, a certified nurse practitioner. All three expert witnesses opined that, based upon their independent reviews of Rabideau's medical records, as well as the relevant deposition testimony, the care and treatment provided by Holodak on December 26, 2013 and February 3, 2014 comported with the standard of care required under the circumstances. Further, all three defense experts opined that, based upon Holodak's examinations of Rabideau in December 2013 and February 2014, as well as Rabideau's presentation and symptoms on those dates — which were indicative of a viral illness in December and a tension headache and possible sinusitis in February — a CT scan was not warranted. Oppenheim further noted that, in July 2014, Rabideau reported to his treating neurologist that he had lost consciousness after hitting his head in a new fall and that, significantly, the treating neurologist did not order a CT scan.
The conflicting medical evidence and expert opinions offered by the parties presented a credibility determination for the jury, which, as was its purview, it resolved against plaintiffs (see Mazella v Beals, 124 AD3d 1328, 1329 [2015]; McElroy v Yousuf, 268 AD2d 733, 736 [2000]). According deference to the jury's credibility determinations, we do not find that the evidence so preponderated in plaintiffs' favor that the jury's verdict could not have been reached on any fair interpretation of the evidence (see CPLR 4404 [a]; Skelly-Hand v Lizardi, 111 AD3d 1187, 1189-1190 [2013]; Swartz v St. Mary's Hosp. of Amsterdam, 101 AD3d 1273, 1276 [2012], lv denied 21 NY3d 859 [2013]; Biello v Albany Mem. Hosp., 49 AD3d 1036, 1037-1038 [2008]). As such, there is no basis upon which to disturb Supreme Court's denial of plaintiffs' motion to set aside the verdict (see Swartz v St. Mary's Hosp. of Amsterdam, 101 AD3d at 1276; Cramer v Benedictine Hosp., 301 AD2d 924, 930 [2003]).
Next, plaintiffs argue that Supreme Court should have granted their requests for jury instructions charging that Holodak could be found liable based on the allegation that he was providing nursing services in violation of Education Law § 6902 (3) (a) (i) and that Weitz could be found liable based on the allegation that he failed to adequately collaborate with Holodak, as required by that same statute. Education Law § 6902 (3) (a) (i), as it was written in 2013 and 2014, states that "[t]he practice of registered professional nursing by a nurse practitioner . . . may include the diagnosis of illness and physical conditions and the performance of therapeutic and corrective measures within a specialty area of practice, in collaboration with a licensed physician qualified to collaborate in the specialty involved, provided such services are performed in [*2]accordance with a written practice agreement and written practice protocols" (Education Law § 6902 [former (3) (a) (i)]).
Plaintiffs' jury charge requests hinged on the premise that Education Law § 6902 (former [3] [a] [i]) provides for a private right of action that allows patients to seek civil relief for injuries sustained as a result of a statutory violation. However, we need not resolve that question now, for, even if the statute provides for such a private right of action, plaintiffs failed to present any evidence that could support the conclusion that the failure to adequately collaborate or the absence of practice protocols in the collaboration practice agreement were causally connected to Rabideau's injuries (see Anderson v House of Good Samaritan Hosp., 44 AD3d 135, 143 [2007]; Gong v Gjoni, 6 AD3d 896, 898 [2004]). Thus, even assuming, without deciding, that a private right of action exists under Education Law § 6902 (former [3] [a] [i]), plaintiffs' evidence did not support a jury instruction charging such.
Based on the same lack of proof establishing a causal connection, we also reject plaintiffs' related argument that Supreme Court should have additionally charged the jury that Weitz could be held liable under a common-law theory of negligence for failing to collaborate in the manner required by defendants' specific collaboration practice agreement (see Anderson v House of Good Samaritan Hosp., 44 AD3d at 143; Gong v Gjoni, 6 AD3d at 898). To the extent that we have not expressly addressed any of plaintiffs' remaining arguments, they have been examined and found to be lacking in merit.
Egan Jr., J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the judgment and order are affirmed, with one bill of costs.