■ SANDRA F. SIEGEL, Respondent-Appellant, v HARVEY WANK, Defendant, and JEFFREY A. WATSON, Appellant-Respondent. [703 NYS2d 835] —Crew III, J. Cross appeals (1) from a judgment of the Supreme Court (Relihan, Jr., J.), entered May 22, 1998 in Tompkins County, upon a verdict rendered in favor of plaintiff and against defendant Jeffrey A. Watson, and (2) from an order of said court, entered May 22, 1998, which partially granted said defendant's motion to set aside the verdict and granted a new trial on the issue of damages unless plaintiff stipulated to a reduced verdict.

Plaintiff, a professor at Cornell University, commenced this dental malpractice action against defendant Jeffrey A. Watson (hereinafter defendant) and defendant Harvey Wank seeking to recover for damages she allegedly sustained following the installation of four titanium dental implants, two on the upper right and two on the upper left of plaintiff's jaw, in July 1988. During the year that followed this surgery, plaintiff experienced a number of complications, including severe bleeding, a bad

taste and odor in her mouth, repeated infections, changed facial contours, difficulties speaking, a persistent feeling of "tongue crowding" and the disintegration of her temporary prosthesis. Following the installation of her permanent prosthesis in July 1989, plaintiff still found it very difficult to speak and/or project her voice, and the pain in her face and tongue crowding persisted.

Between July 1989 and May 1991, plaintiff consulted with a number of dental specialists in an attempt to resolve the problems that she was experiencing. To that end, plaintiff sought treatment from Paul Schnitman, a dentist specializing in prosthodontics, who removed the prosthesis and the anterior upper right implant. Thereafter, in late 1992, plaintiff sought treatment from two additional specialists, Ira Zinner and Stanley Small, who ultimately removed the remaining upper right implant and installed new implants at that location. Following this surgery and the installation of a new prosthesis, plaintiff's speech essentially returned to normal.

Plaintiff commenced this action in March 1991 and, following joinder of issue, extensive discovery and an unsuccessful motion to dismiss the complaint (*see*, 183 AD2d 158), the matter proceeded to trial in March 1998.* At the conclusion of the two-week trial, during the course of which numerous witnesses testified in person or on videotape, the jury returned a verdict in favor of plaintiff. Although finding that both defendant and Wank were negligent in their care and treatment of plaintiff, the jury determined that defendant's negligence was the sole proximate cause of plaintiff's injuries and awarded plaintiff $65,000 for medical expenses and $475,000 for past pain and suffering.

Defendant thereafter made a posttrial motion to set aside the verdict contending, *inter alia,* that the verdict was against the weight of the evidence and was inconsistent in that Wank was found to be negligent but not liable. In the alternative, defendant requested a reduction in damages. After concluding that the verdict was neither inconsistent nor against the weight of the evidence, Supreme Court ordered a new trial on the issue of damages only unless plaintiff consented to a reduction in the award for past pain and suffering from $475,000 to

---

* In the interim, defendant moved to strike the videotaped testimony of Zinner and Small. Wank, later joined by defendant, moved to strike the testimony of Schnitman and Joan Arvedson, a speech pathologist, contending that such testimony was without foundation and outside the scope of the bill of particulars/expert disclosure statement. Supreme Court denied the motions without prejudice to renew at trial.

$400,000. Plaintiff consented to the reduction but reserved her right to appeal. These appeals ensued.

Turning first to the issues raised on defendant's appeal, we cannot say, based upon our review of the record as a whole, that the verdict was against the weight of the evidence. Defendant's argument on this point is twofold: first, that plaintiff's experts failed to testify that defendant's actions deviated from established standards of care as they existed in 1988 when the implant surgery was performed and, additionally, that plaintiff failed to establish a causal relationship between defendant's actions and her injuries. In reviewing these claims, we must bear in mind that a jury verdict may be set aside as against the weight of the evidence only when the evidence so preponderates in favor of the moving party that the verdict could not have been reached on any fair interpretation of the evidence (*see, Lolik v Big V Supermarkets*, 86 NY2d 744, 746; *Palmateer v Whitcavitch*, 256 AD2d 943, 944, *lv denied* 93 NY2d 804).

As to the standard of care issue, even accepting defendant's contention that the testimony provided by Zinner and Small offered no insight in this regard, the same simply cannot be said of Schnitman's testimony. Although Schnitman's testimony on this point was perhaps inartfully stated at times, he did not, as defendant asserts, testify that there were no standards of care governing defendant's treatment of plaintiff. To the contrary, Schnitman specifically testified that the standard in 1988 was to "get something into the bone that can be brought in line with the teeth, or don't do implants. That was the clear standard." Schnitman went on to testify that given the limited amount of bone available for anchoring the implant in plaintiff's mouth, the standards that existed in 1988 would have required the use of a narrower implant and one that could have received an angled head. According to Schnitman, defendant's care and treatment of plaintiff deviated from this standard of care in that defendant did not use the proper implant for plaintiff's mouth, resulting in an implant that was too palatal. Such testimony, in our view, is sufficient to establish not only the standards of care by which defendant's conduct was to be judged but, further, that defendant's care and treatment of plaintiff deviated from such standards and constituted negligence.

With respect to the causation issue, defendant essentially contends that in view of Schnitman's testimony that this type of surgery required a "team concept", i.e., defendant and Wank working together, the jury improperly concluded that defen-

dant's negligence was the sole proximate cause of plaintiff's injuries. Defendant's argument on this point essentially distills to a claim that the verdict rendered by the jury was inconsistent. Having failed to raise this issue before the jury was discharged, however, defendant did not preserve this issue for review (*see, Cerniglia v Wisniewski*, 267 AD2d 660, 661).

In short, affording due deference to the jury's resolution of the conflicting medical evidence (*see, Lohan v Evanczyk*, 229 AD2d 844, 846), we cannot say that the jury's verdict was against the weight of the evidence. Defendant's remaining arguments on this point have been examined and found to be lacking in merit.

Turning to the issue of damages, it is well settled that "the amount awarded as damages for personal injuries is a factual question for the jury and considerable deference must be given to its interpretation of the evidence" (*Preston v Young*, 239 AD2d 729, 732; *see, Teller v Anzano*, 263 AD2d 647, 648-649). Based upon our review of the record as a whole, we are not persuaded that the sum initially awarded by the jury ($540,000) "deviate[d] materially from what would be reasonable compensation" (CPLR 5501 [c]).

As to the $65,000 awarded for medical expenses, even a cursory review of the billing records submitted by plaintiff's treating dentists substantiates the sum awarded. We reach a similar conclusion regarding the $475,000 initially awarded by the jury for past pain and suffering. As noted previously, plaintiff experienced numerous complications in the year that followed the installation of the implants in July 1988, including severe bleeding, a bad taste and odor in her mouth, repeated infections, changed facial contours, difficulties speaking, a persistent feeling of "tongue crowding" and the disintegration of her temporary prosthesis. Following the installation of her permanent prosthesis in July 1989, plaintiff still found it very difficult to speak and/or project her voice, and the pain in her face and tongue crowding persisted. Plaintiff testified that the problems with her speech continued until Schnitman removed the prosthesis and anterior upper right implant in late 1991 and, in the interim, she developed a clicking or grinding in her jaw. There was additional testimony that plaintiff experienced difficulties chewing certain foods during this time period. The record further reflects that plaintiff underwent additional corrective surgeries in 1993, which included bone grafts, the removal of the remaining upper right implant and the installation of additional implants. As to the impact on her career, plaintiff testified that she declined at least four signifi-

cant opportunities to lecture due to the problems with her speech and was compelled at one point to take a medical leave of absence in order to obtain proper treatment.

In light of such testimony, and in view of the suffering endured by plaintiff over the five-year period in issue, we cannot say that the jury's award deviated materially from what would be reasonable compensation. Accordingly, we are of the view that Supreme Court erred in partially granting defendant's motion to set aside the verdict and ordering a new trial as to damages unless plaintiff stipulated to a reduced award.

Mercure, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as reduced plaintiff's award of damages to $465,000; the jury's award of $540,000 is reinstated; and, as so modified, affirmed. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted a motion by defendant Jeffrey A. Watson to set aside the verdict and ordered a new trial as to the issue of damages only unless plaintiff consented to a reduction of the sum awarded for past pain and suffering from $475,000 to $400,000; motion denied to said extent and the jury's initial award of $475,000 for past pain and suffering is reinstated; and, as so modified; affirmed.

