■ LISA M. BIELLO, Appellant, v ALBANY MEMORIAL HOSPITAL et al., Respondents. [853 NYS2d 697]—

Lahtinen, J.

Plaintiff contends that she sustained a circular thermal burn on her right calf while defendant David Dixon was performing surgery on her right ankle at defendant Albany Memorial Hospital. The condition of her calf injury eventually resulted in further surgery by Francis Cullen, a plastic surgeon with whom she consulted following the ankle surgery. Defendants denied that the injury on plaintiff's calf was caused by a thermal burn and further denied that her injury occurred during the ankle surgery. Plaintiff commenced this action asserting malpractice

and negligence, as well as the applicability of the doctrine of res ipsa loquitur. Sharply conflicting evidence and expert opinions were presented at the ensuing trial, which ended with the jury returning a verdict for defendants. Plaintiff's motion to set aside the verdict was denied by Supreme Court. Plaintiff appeals, arguing that the verdict was against the weight of the evidence and that certain questions by defendants' counsel deprived her of a fair trial.

The standard for determining if a verdict is against the weight of the evidence is "whether the evidence so preponderate[d] in favor of the [movant] that [the verdict] could not have been reached on any fair interpretation of the evidence" (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995] [internal quotation marks and citation omitted]; *see Siegel v Wank*, 270 AD2d 573, 575 [2000]; *Horner v Way*, 257 AD2d 819, 820 [1999]). In conducting this analysis, we give "due deference to the jury's resolution of credibility issues and conflicting expert evidence" (*Kenny v Lesser*, 281 AD2d 853, 855 [2001]; *see Perry v Wine & Roses, Inc.*, 40 AD3d 1299, 1299-1300 [2007]; *Hudson v Lansingburgh Cent. School Dist.*, 27 AD3d 1027, 1030 [2006]).

Dixon performed a right peroneal tendon tenosynovectomy on plaintiff with a goal of alleviating her ongoing problem with right ankle pain. At the conclusion of the surgery, a plaster splint, wrapped with a bandage, was applied from her foot to just below the knee. Plaintiff's complaints of pain emanating from under the splint while still in ambulatory recovery resulted in the bandage being removed and her leg examined by Paula Maniscalco, a physician's assistant. According to plaintiff and her boyfriend, this revealed a red circular area about four inches in size on her calf. Maniscalco, on the other hand, testified that she assessed no problem and did not recall any red area on plaintiff's calf. Plaintiff was discharged later that same day and she returned to see Dixon five days later. Dixon observed a $1^1/_2$-inch blister on plaintiff's calf, which he concluded was caused by abrasion, and he placed her in a shorter cast, the top of which was below the blister.

When plaintiff experienced continuing problems with the healing of the calf area, she sought treatment from Cullen. Although Cullen described the condition in his records as a "burn-like" wound, he explained in his testimony that this was meant to describe "the degree of the injury, not necessarily the cause of the injury." Dixon testified at trial that there was no instrument or device in the operating room that day which could have caused plaintiff to sustain a burn and, with respect to the electrocautery device that plaintiff contended could have caused

the burn, he gave a video demonstration to support his assertion that an inadvertent burn would not have occurred with this device.

There was also evidence that plaintiff did not strictly adhere to directions regarding not walking in the cast and not getting the cast wet. Defendants' expert, Rory Wood, opined that plaintiff's calf was not burned during the surgery on her ankle, the injury was consistent with many possible causes (including pressure sore, chemical burn, thermal burn, or friction) and the injury would have appeared different if inflicted by the electrocautery device. Plaintiff's expert, Paul Miller, maintained that plaintiff had sustained a thermal burn on her calf while undergoing ankle surgery. In short, there was conflicting proof and differing expert opinions on virtually every issue and, upon review of the record, we are unpersuaded that the jury's resolution of those issues was improper or that its verdict was not supported by a fair interpretation of the evidence.

Next, we consider plaintiff's argument that she was deprived of a fair trial by improper questioning, including questions posed to her regarding past drug use. Improper questions or comments which are unduly inflammatory or prejudicial can deprive a party of a fair trial and thus require reversal (*see Bagailuk v Weiss*, 110 AD2d 284, 285-287 [1985]; *see also Brooks v Judlau Contr., Inc.*, 39 AD3d 447, 449 [2007]; *O'Neil v Klass*, 36 AD3d 677, 677-678 [2007]). The two questions asked to plaintiff about prior drug use were objected to in a timely fashion, the objections were sustained by Supreme Court, and no answer was given by plaintiff. Within the context of the entire trial, these questions did not deprive plaintiff of a fair trial. The additional questions that plaintiff contends were improper (such as asking a nurse whether she thought Dixon was a careful surgeon and asking whether anyone else was burned in the operating room on the date of the surgery), even when considered cumulatively with all questions that plaintiff asserts were improper, do not rise to the level of depriving plaintiff of a fair trial.

Cardona, P.J., Carpinello, Kane and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, with one bill of costs.