ELSIE DENTES, as Administrator of the Estate of GEORGE DENTES, Deceased, Respondent, v JONATHAN MAUSER et al., Appellants. [937 NYS2d 409]—

Spain, J.

---

To establish wrongful death by medical malpractice, plaintiff was required to prove, through expert testimony, "that there was a deviation from accepted standards of medical care and that such deviation was the proximate cause of the [death]" (*Hytko v Hennessey*, 62 AD3d 1081, 1084 [2009]). Allegations of malpractice that are "based on speculation or unsupported by competent evidence" are insufficient to establish a prima facie case (*Chase v Cayuga Med. Ctr. at Ithaca*, 2 AD3d 990, 991 [2003]). A verdict should be set aside as against the weight of the evidence when " 'the evidence so preponderate[d] in favor of [defendants] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Biello v Albany Mem. Hosp.*, 49 AD3d 1036, 1037 [2008], quoting *Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). After a thorough review of the record, we conclude that plaintiff failed to establish by legally sufficient proof that the alleged negligence on the part of defendant—i.e., the failure to order a cardiac catheterization—caused decedent's death. In addition, we find that the jury's finding to the contrary is against the weight of the credible evidence adduced at trial.

Plaintiff relied exclusively on the expert testimony of Adrian Grubs, a board-certified cardiologist, to establish that defendant's failure to order a cardiac catheterization after the 2005 stress test caused decedent's death. Crucial to understanding the causation issues underlying this appeal is the difference between coronary artery disease, or atherosclerosis, which involves the gradual thickening over years of the artery walls that reduces blood flow to the heart, and thrombus, where a clot forms and can suddenly block an artery. It is undisputed that decedent suffered from some coronary artery disease; the pathology slides revealed that his arteries had about 50% atherosclerosis, and

the trial evidence established that this condition would have existed 18 months prior to his death, when he was treated by defendant. Cardiac catheterization is used to determine the degree of atherosclerosis in a patient. Here, however, it is undisputed that decedent's heart attack was not caused by coronary artery disease, but by a thrombus, which unquestionably caused his death by suddenly and completely blocking his right coronary artery.

Grubs testified that, had defendant ordered a cardiac catheterization, it would have prevented his death, but failed to articulate any basis for this conclusion. Although he stated that he believed a cardiac catheterization "would have shown a significant block [in the right coronary artery]" that could have suggested different treatment options, it is clear from his testimony that he was referring to decedent's 50% atheroscerlosis, and not the thrombus that killed him. When pressed about whether a thrombus would have been detected 18 months prior to decedent's death, he stated that "[i]t's hard to tell." Ultimately on the issue of causation, he testified that, in his opinion, "if [decedent] had been given a chance, depending on what the cardiac cath[eterization] showed, it might have helped [decedent] in prolonging his life." We find this testimony far too vague to establish a legally sufficient link by which the trier of fact could conclude that defendant's failure to order a cardiac catheterization led to the clot which caused his massive heart attack a year and a half later (see *Caruso v Northeast Emergency Med. Assoc., P.C.*, 85 AD3d 1502, 1504-1505 [2011]; *Menard v Feinberg*, 60 AD3d 1135, 1137 [2009]; *Postlethwaite v United Health Servs. Hosps.*, 5 AD3d 892, 895 [2004]; *Merritt v Saratoga Hosp.*, 298 AD2d 802, 804-805 [2002]).

The weight of the evidence, moreover, cannot support a finding that a cardiac catheterization would have prolonged decedent's life. Balanced against Grubs' cautious speculations about decedent's chances had he undergone a cardiac catheterization is a wealth of evidence that the clot that caused decedent's death could not have been detected at the time defendant examined decedent, and that it was unlikely that any treatment would have prevented this tragedy. Indeed, the evidence conclusively establishes that decedent had a level of coronary artery disease consistent with a man of his age and that, even had a cardiac catheterization been performed, the extent of decedent's atherosclerosis detected thereby would not have warranted treatment beyond the lifestyle changes that defend-

ant had already recommended.* Aside from Grubs' inconclusive testimony, all other medical evidence introduced at trial established that the alternative treatments that Grubs discussed as potential options had a cardiac catheterization been performed—namely, angioplasty or stents—would not have been viable options for decedent. It is undisputed that stents or angioplasty are not typically used unless the blockage was more significant than decedent's and, in fact, that these treatments run the risk of causing a thrombus, like the one that killed decedent. Indeed, the overwhelming medical evidence supports the conclusion that decedent's condition at the time defendant saw him was not exceptional, that most people have some level of nonobstructive coronary artery disease by the time they reach middle age and that the appropriate treatment is lifestyle changes and monitoring, just as defendant recommended. We conclude that the evidence with regard to proximate cause so preponderated in defendant's favor that the jury could not have reached its conclusion based on any fair interpretation of it (*see Ernst v Khuri*, 88 AD3d 1137, 1137-1139 [2011]; *Blakeslee v Lubell*, 66 AD2d 958, 958-959 [1978]; *Deutsch v Doctors Hosp.*, 19 AD2d 593, 594 [1963]).

Peters, J.P., McCarthy, Garry and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, motion to set aside the verdict granted and complaint dismissed.

---

* Decedent also had a stress test with echocardiogram in 2001 with negative results for significant coronary disease. It was established at trial that the stress test and echocardiogram is a tool used to identify only individuals with a more significant level of atherosclerosis—i.e., over 70%—than decedent had when he died. The physician who conducted the test in 2001, like defendant, recommended lifestyle changes and, thereafter, decedent lost 10 pounds. When decedent was retested by defendant in 2005, his exercise capacity had improved and the tests were again negative for high scale arterial blockage.