■ SUSAN SKELLY-HAND et al., as Parents and Guardians of RACHEL ELIZABETH HAND, an Infant, Respondents-Appellants, v JOSE LIZARDI, Appellant-Respondent. [975 NYS2d 514]—

Garry, J. Cross appeals from an order and judgment of the Supreme Court (Demarest, J.), entered November 19, 2012 in St. Lawrence County, upon, among other things, a verdict rendered in favor of plaintiffs.

Plaintiffs are the parents of Rachel Elizabeth Hand (hereinafter the child) who was delivered in 1996 by defendant, an obstetrician-gynecologist. A complication known as shoulder dystocia, in which the child's shoulder becomes lodged against the mother's pubic bone, occurred during the delivery. The child was born with an injury to her brachial plexus—a group of nerves running from the neck into her arm—and was diagnosed with Erb's palsy. Plaintiffs commenced this medical malpractice action in January 2012. Following a trial, a jury returned a verdict in plaintiffs' favor. Defendant moved to set aside the verdict, and plaintiffs cross-moved to set aside the verdict as to damages. Supreme Court denied both motions, and plaintiffs were awarded judgment in a total amount of approximately $3,150,000. Defendant appeals and plaintiffs cross-appeal.

To sustain a finding of medical malpractice, there must be "proof that [the] defendant[ ] deviated from accepted medical practice and that such deviation was the proximate cause of [the] plaintiff's injury" (*Adams v Anderson*, 84 AD3d 1522, 1523 [2011]; *see Dentes v Mauser*, 91 AD3d 1143, 1144 [2012], *lv denied* 19 NY3d 811 [2012]). Here, defendant contends that plaintiffs did not establish that the child's injury was proximately caused by defendant's failure to deliver her by cesarean section, and that Supreme Court thus erred in denying his motion to set aside the verdict. We disagree. Plaintiffs' expert obstetrician-gynecologist, Lawrence Borow, testified that physicians should seek to predict and avoid shoulder dystocia by evaluating various risk factors, the most important of which is the baby's birth weight. Borow stated that a significant risk factor for shoulder dystocia is a birth weight of more than 8 pounds 13 ounces, and that this risk factor was applicable to the subject child, who weighed nine pounds, two ounces at birth. Prior to the delivery, defendant had estimated—based upon his measurements and an ultrasound examination—that the child weighed less than eight pounds, and he based his decision not to call for a cesarean section in part upon this estimate. Borow testified that all such estimated weights are subject to a margin of error of 15%, and opined that in view of other risk factors present in this case—such as the mother's short stature, the father's rela-

tive height of well over six feet, the mother's weight and the birth weight of the parents' older child—defendant should have recognized that the child's true weight could be substantially greater than his estimate, resulting in a significant risk of shoulder dystocia. Finally, Borow noted that the mother's labor failed to progress after an initial four-hour "trial." Based upon all of these factors, he opined that defendant should have made the decision to deliver the child by cesarean section, that his failure to do so deviated from the accepted standard of care, and that this failure proximately caused the child's injury. The jury apparently accepted this opinion, finding that defendant deviated from the standard of care by failing to prepare for and perform a cesarean section and that this failure was a substantial factor in bringing about the child's injury.

As defendant contends, Borow also opined that defendant used an improper technique in delivering the child and that this technique was the specific cause of the child's brachial plexus injury. The jury apparently rejected this opinion, finding that defendant did not deviate from the standard of care by using the technique in question. However, we disagree with defendant that this jury determination precludes a conclusion that defendant's negligence was the proximate cause of the injury. In order to prove proximate cause, plaintiffs were required to provide expert testimony establishing that it was more likely than not that defendant's breach caused the child's injury, but were not obliged to eliminate all other potential causes (*see Lang v Newman*, 54 AD3d 483, 487 [2008], *affd* 12 NY3d 868 [2009]; *Turcsik v Guthrie Clinic, Ltd.*, 12 AD3d 883, 886 [2004]; *Villa v City of New York*, 148 AD2d 699, 701 [1989]). Here, the medical testimony established that the child's injury would not have occurred had the shoulder dystocia been avoided by performing a cesarean section. In addition to Borow's opinion to this effect, the child's treating surgeon—a specialist in brachial plexus injuries—testified that the main cause of such injury is shoulder dystocia and that the child's injury was related to this condition. Even defendant's expert opined that the injury was caused by "[t]he forces of labor." Viewing this testimony in the light most favorable to plaintiffs, it cannot be said "that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion" that the child's injuries were proximately caused by defendant's failure to deliver her by cesarean section (*Imbierowicz v A.O. Fox Mem. Hosp.*, 43 AD3d 503, 505 [2007] [internal quotation marks and citations omitted]; *see Swartz v St. Mary's Hosp. of Amsterdam*, 101 AD3d 1273, 1276 [2012], *lv denied* 21 NY3d 859 [2013]; *Lang v Newman*, 54 AD3d at 487). Further, giving

due deference to the jury's credibility assessments and resolution of the conflicting expert testimony, we cannot say that the evidence regarding proximate cause preponderated so strongly in defendant's favor that the jury's conclusion could not have been based on any fair interpretation of the evidence (*see Biello v Albany Mem. Hosp.*, 49 AD3d 1036, 1037-1038 [2008]; *compare Dentes v Mauser*, 91 AD3d at 1146).

Defendant next contends that the damage awards of $1 million for the child's past pain and suffering and $1 million for her future pain and suffering should be set aside as unreasonable, while plaintiffs contend that the award for future pain and suffering should be increased. The amount of a damage award for personal injuries is a factual question to be resolved by the jury and is set aside only when the award "deviates materially from what would be reasonable compensation" (CPLR 5501 [c]; *see Vogel v Cichy*, 53 AD3d 877, 878 [2008]). This Court accords deference both to the jury's damage assessment and to the trial court's decision on a motion to set aside a verdict assessing damages (*see Ciuffo v Mowery Constr., Inc.*, 107 AD3d 1195, 1198 [2013]; *Felitti v Daughriety*, 12 AD3d 909, 910 [2004]). As awards for pain and suffering cannot be precisely quantified, the reasonableness of such awards is measured by reviewing comparable cases, and analyzing such factors as "the nature, extent and permanency of the injuries, the extent of past, present and future pain and the long-term effects of the injury" (*Nolan v Union Coll. Trust of Schenectady, N.Y.*, 51 AD3d 1253, 1256 [2008], *lv denied* 11 NY3d 705 [2008]; *see Ciuffo v Mowery Constr., Inc.*, 107 AD3d at 1197).

Many of the decisions involving brachial plexus birth injuries upon which defendant relies in arguing for a reduction of the award are unhelpful as they fail to indicate the severity of the underlying injury (*see Abdelkader v Shahine*, 66 AD3d 615, 616-617 [2009]; *Miller v Weisel*, 15 AD3d 458, 458-459 [2005]; *Reid v County of Nassau*, 215 AD2d 466, 466-467 [1995]; *Sutherland v County of Nassau*, 190 AD2d 664, 664-665 [1993], *lv denied* 81 NY2d 710 [1993]; *Stackhouse v New York City Health & Hosps. Corp.*, 179 AD2d 357, 357-358 [1992]), while others describe the injury as mild (*see Sankar v Jamaica Hosp. Med. Ctr.*, 68 AD3d 844, 844-845 [2009]; *Charles v Day*, 289 AD2d 190, 191 [2001]). In arguing for an increased award, plaintiffs rely primarily upon a decision that reduced a jury award for future pain and suffering to $2,950,000 in a case involving a three-year-old with Erb's palsy (*see Harding v Onibokun*, 14 Misc 3d 790, 798 [Sup Ct, Jefferson County 2006]).

Here, the evidence fully established the severe impact of the

child's injury. The child's treating surgeon—whose practice is limited to brachial plexus injuries—described her injury as "more severe" than most of those he has treated. Other providers testified that her arm and shoulder function is severely limited and that it is difficult or impossible for her to do tasks requiring the use of two hands. The child, who was 16 years old at the time of trial, underwent extensive and often painful or uncomfortable medical treatments and therapies throughout her childhood, including five surgeries and lengthy periods of wearing braces, splints or casts on her injured arm. Additionally, she wore a back brace to treat scoliosis syringomyelia, a condition causally related to her brachial plexus injury. There was evidence that her appearance, social adjustment and self-confidence had been affected and that her surgeries and treatments had at times prevented her from attending school. With assistance, she can participate in certain recreational activities, including horseback riding, but she is completely precluded from engaging in many other athletic pursuits by the injury's effects on her strength, balance and coordination. The evidence established that she will require various medical treatments and therapies indefinitely, and that her continuing need for assistance with basic activities of daily living such as bathing, grooming and dressing will restrict her future opportunities and permanently limit her independence. Considering this evidence, and upon review of the previously-discussed damage awards for brachial plexus injuries as well as review of cases involving other significant impairments to the shoulder and arm (*see e.g. Garrow v Rosettie Assoc., LLC*, 60 AD3d 1125, 1125-1126 [2009] [and cases cited therein]), we do not find that the damages awarded for past and future pain and suffering materially deviate from the range of reasonable compensation (*see* CPLR 5501 [c]; *Garrison v Lapine*, 72 AD3d 1441, 1443 [2010]). Supreme Court properly declined the parties' respective requests to modify the jury's award.

Stein, J.P., McCarthy and Spain, JJ., concur. Ordered that the order and judgment is affirmed, without costs.