Santiago v Berman (2025 NY Slip Op 51440(U))

[*1]

Santiago v Berman

2025 NY Slip Op 51440(U)

Decided on September 12, 2025

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 12, 2025
Supreme Court, Westchester County

Sandra Santiago, as Administratrix of the 
 Estate of JOSE SANTIAGO, Deceased, Plaintiff,

against
Evan Berman, M.D., Defendant.

Index No. 55334/2020

Attorney for Plaintiff:
Nicholas W. Dell'Anno, Esq. Of Counsel
Krentsel Guzman Herbert, LLP
40 Wall Street, 45th floor
New York, NY 10005
(212) 227-2900
Attorney for Defendant:
Neil B. Ptashnik, Esq.
Voute, Lohrfink, McAndrew & Meisner, LLP
170 Hamilton Avenue
White Plains, NY 10601
(914) 946-1400

William J. Giacomo, J.

In this underlying action alleging medical malpractice, at the close of plaintiff's testimony, defendant moved pursuant to CPLR 4401 for a directed verdict.
Pursuant to CPLR 4401, "[a]ny party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue, or at any time on the basis of admissions. Grounds for the motion shall be specified." On a motion for a directed verdict, "defendant has the burden of showing that, upon viewing the evidence in the light most favorable to the plaintiff, the plaintiff has not made out a prima facie case. The court may grant the motion only if there is no rational process by which the jury could find for the plaintiff against the moving defendant." Lyons v McCauley, 252 AD2d 516, 517 (2d Dept 1998).
Medical Malpractice
"In order to establish a prima facie case of liability in a medical malpractice action, a [*2]plaintiff must prove (1) the standard of care in the locality where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach was the proximate cause of injury." Perrone v Grover, 272 AD2d 312, 312 (2d Dept 2000). To meet its burden, plaintiff must "present expert opinion testimony that the defendant's conduct constituted a deviation from the requisite standard of care." Id.
Expert's Testimony
At the outset, the Court finds that plaintiff's expert is unqualified to render an expert opinion. At trial, plaintiff called Dr. Issac Lowe, who testified that he reviewed the medical records. Dr. Lowe is a board-certified general surgeon licensed only in Illinois, California and Missouri. Dr. Lowe testified that he had no clinical experience or training in New York. While "an expert need not be from the exact same locality as where the occurrence took place. It is sufficient if the expert attests to familiarity with either the standard of care in the locality or to a minimum standard applicable locally, statewide, or nationally." M.C. v Huntington Hosp., 175 AD3d 578, 580-581 (2d Dept 2019).
Here, Dr. Lowe failed to attest to a standard in New York, or even to a minimum standard applicable locally, statewide, or nationally.
Accordingly, as plaintiff's expert failed to lay the proper foundation to render an opinion as to Dr. Berman's actions, plaintiff is unable to prove, through expert testimony, that Dr. Berman departed from the standard of care when treating the decedent. See e.g. Lyons v McCauley, 252 AD2d at 517 ("Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause . . . ."). Even assuming Dr. Lowe was qualified, as set forth below, plaintiff fails to establish a prima facie case of malpractice.
Deviations from the Standard of Care
On May 3, 2018, Dr. Berman performed an incarcerated incisional hernia repair surgery on the decedent. Dr. Berman successfully repaired the hernia and resected the bowel. Dr. Berman testified that, under the circumstances, surgery was indicated. 
As set forth in the supplement notice of expert exchange, Dr. Lowe was set to testify that Dr. Berman "departed from the standard of care preoperatively by failing to attempt a conservative approach in the 92-year-old decedent . . .." For example, Dr. Berman allegedly could have attempted to manually reduce the hernia by pushing it back in.
Dr. Lowe testified that he "felt that there should have been more of an attempt at non surgical, non surgical treatment of the situation . . . ." 
Dr. Lowe continued that nonsurgical care should be attempted first because there are risks to surgery. Dr. Lowe further testified that the basis of his opinion is "on my experience in my practice and what patients I've cared for in the past." When asked what injuries were caused due to Dr. Berman's failure attempt to reduce a hernia prior to surgery, Dr. Lowe opined the following:
"failure to reduce the hernia or at least to attempt to reduce the hernia resulted in the patient undergoing surgery which resulted in his bowel perforation and spillage intestinal contents into the abdominal cavity, his post-operative infection, his respiratory failure that he experienced immediately during and after surgery, his kidney injury getting worse after surgery, a portion of that improved. And his intestinal function never really [*3]returned."
Dr. Lowe acknowledged that plaintiff consented to the surgery and testified that the surgery was appropriately performed. Dr. Lowe also conceded that a sign that surgery would be indicated is edema in the bowel. After the surgery, the pathologist found inflammation, edema and hemorrhage. Specifically, the surgical pathological report in the record indicated that specimens were taken from small bowel #1 and small bowel #2. Both specimens indicated the following:
"segment of small bowel with areas of perforation and associate acute inflammation, edema and hemorrhage. Acute serositis. Surgical margins are viable." Nonetheless, Dr. Lowe testified, without any support, that the tissue removed would be edematous due to the surgery and manipulation. 
It is well settled that "[a]llegations of malpractice that are based upon speculation or unsupported by competent evidence are insufficient to establish a prima facie case." Dentes v Mauser, 91 AD3d 1143, 1144 (3d Dept 2012) (internal quotation marks omitted). Here, the testimony from Dr. Lowe is speculative and is insufficient to establish that Dr. Berman deviated from accepted medical practice by failing to attempt a conservative approach prior to surgery and that such deviation was a proximate cause of plaintiff's injuries. Courts have held, "[w]ith respect to opinion evidence, it is well settled that expert testimony must be based on facts in the record or personally known to the witness, and that an expert cannot reach a conclusion by assuming material facts not supported by record evidence." Roques v Noble, 73 AD3d 204, 206 (1st Dept 2010). As noted, Dr. Lowe did not examine the decedent at the time of surgery and based his opinion on his experience in his own medical practice. Dr. Lowe further acknowledges that plaintiff consented to the surgery, that it was successful and that the pathology report showed signs of edema, which is a sign that surgery was warranted. 
Finally, Dr. Lowe only surmises that Dr. Berman's failure to attempt conservative treatment prior to surgery caused plaintiff's injuries. Not only is this assertion unsupported in the record and contradicted by Dr. Lowe's testimony, it is "too speculative to support" a claim for malpractice. Skipper v City of New York, 186 AD2d 439, 439 (1st Dept 1992); see also Russell v River Manor Corp., 216 AD3d 827, 830 (2d Dept 2023) ("[t]he expert affirmation proffered by the plaintiff was conclusory and speculative, failed to address the significance of the decedent's many comorbidities, and was silent on the essential issue of proximate cause").
Second Allegation of Deviation of Standard of Care
Dr. Lowe was also expected to testify that Dr. Berman "departed from the standard of care post-operatively in ignoring the fluid collection found on the May 11, 2018 CT scan; improperly labeling the fluid collection as a 'hematoma' and not expecting an abscess." 
As relevant here, Dr. Lowe testified that the surgery was successful and that the decedent was improving clinically. On May 10th it was noted that plaintiff had sepsis secondary to the right lower lobe pneumonia and that he had completed seven days of antibiotics for that. He was also noted as being much improved on May 10th. On May 11th the decedent had a CT scan which showed a mid abdominal fluid collection that could represent an abscess. At that point, Dr. Berman believed that this was more likely a hematoma. Dr. Lowe initially wrote in his affidavit [*4]that Dr. Berman ignored the fluid collection on May 11. However, this is belied by the record, which indicates that Dr. Berman wrote that he did not think it was appropriate to drain it at the time and noted that he would continue to follow it closely. 
Dr. Berman consulted with infectious disease and other specialists, none of whom ordered a CT scan. However, Dr. Lowe testified that he did not believe that the infectious disease specialist deviated from the standard of care. Importantly, Dr. Lowe testified that "if there is a fluid collection, you really can't tell if it's a hematoma or abscess a lot of time."
The decedent continued to improve. On May 15th he was verbally responsive, his vital signs were stable and he was having less pain. He denied chest pain, shortness of breath, nausea, vomiting, fevers or dizziness. Nevertheless, Dr. Lowe opined, without any support, that you would expect to see some of these things if someone had sepsis. He acknowledged that the decedent's white blood cell count was trending downwards on May 15th, which is not consistent with sepsis. He further acknowledged that when the decedent did have sepsis due to his pneumonia, the decedent was very sick, was showing signs of infection and did not have normal vital signs.
On May 16th, the decedent aspirated and had two codes and was resuscitated twice. The treating doctor wrote the cause of the code was suspected aspiration. There was nothing in the medical record about infection or about sepsis. 
In sum, Dr. Lowe previously opined that Dr. Berman's failure to diagnose the decedent's fluid collection as an infection despite the CT scan on May 11, 2018 proximately caused the decedent's injuries, which were allegedly sepsis and ultimate death. However, Dr. Lowe's testimony was unsupported by the medical record and fails to establish plaintiff's prima facie case for this alleged deviation of care. See Paxton v Sosnowski, 238 AD3d 779, 782 (2d Dept 2025) ("[t]he expert affidavits submitted by the plaintiffs contained only speculative and conclusory assertions that the defendant's treatment of the decedent departed from the accepted standard of care, failed to address the specific assertions of the defendant's expert regarding the defendant's treatment of the decedent, and were otherwise unsupported by the record").
As noted above, Dr. Lowe contradicts himself multiple times in the record. For example, although Dr. Berman was allegedly negligent in his treatment of the fluid collection, the infectious disease specialist, who consulted with Dr. Berman, was not. Although Dr. Lowe claims Dr. Berman was negligent in failing to diagnose the fluid collection as an abscess and not a hematoma, he himself acknowledged that "if there is a fluid collection, you really can't tell if it's a hematoma or abscess a lot of time."
Notably, there is no support in the medical record that the decedent had sepsis at the time of death. Although he was diagnosed with sepsis earlier in the hospital stay, he had been treated for this. Dr. Lowe also concedes that plaintiff was improving clinically and showing no signs of sepsis by May 15, 2025, but also claims that he could have sepsis. The medical notes indicate that the decedent aspirated, and that this ultimately led to his death. Again, even if Dr. Berman somehow negligently treated the decedent, which is completely unfounded, there is no causal connection between this negligence and plaintiff's injuries. See e.g. Lyons v McCauley, 252 AD2d at 517 ("the trial court properly granted the defendant's motion to dismiss the action because there was no expert testimony causally linking the defendant's negligence with any delay in the diagnosis of her breast cancer or with any injury that was separate and apart from the underlying cancer"). 
Finally, in support of plaintiff's arguments, plaintiff proffers the death certificate, which [*5]states the cause of death is sepsis, respiratory and fungemia. However, the death certificate fails to support a viable cause of action for medical malpractice. It is undisputed that the decedent had recently suffered from sepsis due to the pneumonia, but recovered. There was nothing in the medical record that the decedent was currently septic, that the abscess caused sepsis or that he died from sepsis.
Accordingly, defendant's motion for a directed verdict based upon plaintiff's failure to establish a prima facie case of medical malpractice is granted. 
Accordingly, it is hereby
ORDERED that defendant's motion is granted.
The above constitutes the Decision and Order of this Court.
Dated: September 12, 2025
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.