MARY ANNE NOLAN, Respondent, v UNION COLLEGE TRUST OF SCHENECTADY, NEW YORK, Appellant. [858 NYS2d 427]—

Malone Jr., J. Appeals (1) from an order of the Supreme Court (Lynch, J.), entered September 8, 2006 in Rensselaer County, which, among other things, denied defendant's motion for a directed verdict, (2) from an order of said court, entered January 17, 2007 in Rensselaer County which, among other things, denied defendant's application for an offset of the monetary award pursuant to CPLR 4545, and (3) from a judgment of said court, entered March 20, 2007 in Rensselaer County, upon a verdict rendered in favor of plaintiff.

On January 26, 2003 at approximately 1:00 A.M., plaintiff was injured while walking across the campus at Union College in Schenectady County, where she was a student, when she stepped into an uncovered manhole with her right leg. Initially, she sustained only scrapes and bruises to her leg that limited her physical activities in the weeks following the incident. Approximately three weeks later, however, she began to experience pain and swelling in her leg and went to the emergency room for treatment. She was hospitalized and diagnosed with blood clots in both legs, a condition known as deep vein thrombosis (hereinafter DVT). Previously, in June 2001, plaintiff had suffered from a similar condition related to her polycystic ovarian syndrome, for which she was taking estrogen, when she developed DVT in her legs and a blood clot moved from there to her lungs resulting in a pulmonary embolism and necessitating the placement of a filter in her interior vena cava. After plaintiff was discharged from the hospital following the recurrence of her DVT, she was prescribed blood thinning medication and placed under certain medical restrictions.

In May 2003, plaintiff commenced this negligence action against defendant. Defendant conceded liability and a trial was subsequently held solely on the issues of causation and damages. At the conclusion of the brief trial, the jury found that defendant's negligence caused plaintiff's injuries and it awarded her $300,000 for past pain and suffering, $7.5 million for future pain and suffering and $8 million for future medical expenses. Defendant thereafter moved, among other things, to set aside the verdict as against the weight of the evidence and as excessive, and for a new trial. Supreme Court denied defendant's motion, but ruled that a new trial would be ordered with respect to damages unless plaintiff stipulated to a reduction of the award for future pain and suffering to $1.5 million and of the award

for future medical expenses to $3.36 million, subject to structuring under CPLR article 50-B and a collateral source hearing pursuant to CPLR 4545. Plaintiff stipulated to the reduction of damages and defendant appeals from Supreme Court's order with respect thereto.

Following a hearing pursuant to CPLR 4545, Supreme Court denied defendant's request for a collateral source offset and ruled that the structured settlement should be adjusted by reducing the award for future medical expenses by $50,000. Defendant also appeals from this order. Plaintiff and defendant ultimately agreed to the structured judgment computation made by plaintiff's economist pursuant to CPLR article 50-B. Supreme Court entered a judgment in accordance therewith. Defendant appeals from the judgment as well.*

Initially, defendant contends that the verdict must be set aside because the evidence presented at the trial concerning causation is legally insufficient and is also against the weight of the evidence. In order for a verdict to be stricken for legal insufficiency, it must appear that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). In order for a verdict to be stricken as against the weight of the evidence, it must appear that "the evidence so preponderate[d] in favor of the [movant] that [the verdict] could not have been reached on any fair interpretation of the evidence" (*Biello v Albany Mem. Hosp.*, 49 AD3d 1036, 1037 [2008] [internal quotation marks and citations omitted]). Upon reviewing the evidence in this case, we do not find that the verdict should be stricken under either of the above standards.

Contrary to defendant's claim, the evidence presented by plaintiff provided a reasonable basis from which the jury could conclude that she was limited in her physical activities as a result of falling into the uncovered manhole and that this, in turn, was a causative factor in the recurrence of her DVT. Plaintiff gave extensive testimony concerning her limited physical activities following the fall, including the reduction in her gym schedule and difficulty climbing stairs. Ram Agrawal, an internist and endocrinologist who treated plaintiff from the onset of her DVT, opined that plaintiff's fall into the uncovered manhole precipitated her recurrence of DVT due to the trauma

---

* The appeals from the two orders are dismissed given the appeal from the final judgment (*see Warnke v Warner-Lambert Co.*, 21 AD3d 654, 655 n 2 [2005]).

and her limited physical activity following the incident. Peter Lamparello, a hematologist who also treated plaintiff, concurred with this opinion, noting that plaintiff's immobilization and predisposition to developing DVT were causative factors. Significantly, defendant did not present any medical testimony of its own to refute the testimony of plaintiff's experts. Consequently, we find no reason to disturb the jury's verdict with respect to causation.

Defendant further asserts that a new trial should be ordered on the issue of damages because the jury's award, even as reduced by Supreme Court, was excessive. In reviewing awards for excessiveness, the pertinent inquiry is whether "the award deviates materially from what would be reasonable compensation" (*Coutrier v Haraden Motorcar Corp.*, 237 AD2d 774, 777 [1997]; *see* CPLR 5501 [c]). We turn first to the $3.36 million awarded to plaintiff for future medical expenses. This award was based upon the testimony of plaintiff that she is currently taking the blood thinning medication Lovenox and that of her treating physicians that she will have to take it for the rest of her life, estimated to be 56 years, at a cost of between $4,500 and $5,000 per month. Inasmuch as defendant did not present any evidence to rebut this testimony or otherwise establish that it was inaccurate, there is no basis to find that the award for future medical expenses is unreasonable. Consequently, we decline to disturb it.

Next, we turn to the $1.8 million awarded to plaintiff for pain and suffering, which consists of $300,000 for past pain and suffering and $1.5 million for future pain and suffering. Preliminarily, we note that " '[b]ecause pain and suffering awards are not subject to precise quantification, examination of comparable cases is necessary to determine whether the award materially deviated from reasonable compensation' " (*Acton v Nalley*, 38 AD3d 973, 976 [2007], quoting *Osiecki v Olympic Regional Dev. Auth.*, 256 AD2d 998, 1000 [1998] [citation omitted]). Moreover, factors to be considered in evaluating such awards include the nature, extent and permanency of the injuries, the extent of past, present and future pain and the long-term effects of the injury (*see Riddle v Memorial Hosp.*, 43 AD2d 750, 751 [1973]).

In the instant case, plaintiff testified that she experienced pain immediately after falling into the uncovered manhole and sustained scrapes and bruises to her right leg. She indicated that she went to the hospital the next day and was told to rest, elevate her leg and to apply ice. She stated that thereafter she continued to experience pain, had difficulty walking and climbing stairs, reduced her activities and stopped going to the gym.

Plaintiff related that she was hospitalized about three weeks later due to pain and swelling in her legs which turned out to be a recurrence of her DVT. She testified that she was in the hospital for about eight days during which time she was in severe pain and was very scared. In view of plaintiff's testimony and considering that she experienced more than a month of pain and medical complications as a result of falling into the uncovered manhole, we do not find that the $300,000 awarded for past pain and suffering materially deviates from what would be reasonable compensation.

With respect to future pain and suffering, plaintiff testified that, following her release from the hospital, she eventually returned to normal and was able to exercise, walk and go to the gym. The only limitations she articulated at the time of trial were the inability to walk long distances or to sit for prolonged periods of time. She stated that she was able to exercise, but experienced some pain in her legs. She further stated that she had to wear compression stockings and had to take the blood thinning medication Lovenox administered through a shot into her abdomen. In addition, one of plaintiff's physicians testified that plaintiff had to avoid potentially traumatic activities because she was on blood thinning medication and that it would be risky for her to become pregnant.

Without diminishing the unpleasantness of plaintiff's ordeal, we find under the circumstances presented that the $1.5 million awarded for future pain and suffering materially deviates from what would be reasonable compensation (see *Ruiz v New York City Tr. Auth.*, 44 AD3d 331, 332 [2007]). Significantly, plaintiff has not suffered from debilitating, permanent, life-changing injuries of the type that have justified awards of this magnitude (compare *Norton v Nguyen*, 49 AD3d 927 [2008] [$2 million awarded to the plaintiff for future pain and suffering in medical malpractice action who, following the removal of her female reproductive organs, underwent menopause at the age of 20, experienced a pulmonary embolism due to estrogen-replacement therapy and was susceptible to blood clots from future hormone therapy]; *Auer v State of New York*, 289 AD2d 626 [2001] [$1.5 million awarded for future pain and suffering to the claimant injured in automobile accident who sustained traumatic brain injury causing quadriplegia, significant cognitive defects, spasticity and contractures in all four limbs, heterotopic ossification in both hips, and who required 24-hour care]; *Karney v Arnot-Ogden Mem. Hosp.*, 251 AD2d 780 [1998], *lv dismissed* 92 NY2d 942 [1998] [$1.4 million awarded for future pain and suffering to the plaintiff in medical malpractice action who, due

to injuries suffered at birth, was diagnosed with cerebral palsy and spastic diplegia leaving him unable to walk or to care for himself]). Consequently, a new trial on damages for future pain and suffering is in order unless plaintiff stipulates to a reduced award in the amount of $450,000.

Lastly, defendant's challenge to Supreme Court's failure to give a missing witness charge is unpreserved for our review as no such charge was requested nor was an objection made by defendant at the trial (*see Carrero v General Fork Lift Co., Inc.*, 36 AD3d 577, 578 [2007]). We have reviewed defendant's remaining contentions, to the extent they are properly before us, and find them to be without merit.

Cardona, P.J., Carpinello, Rose and Stein, JJ., concur. Ordered that the appeal from the orders are dismissed, without costs. Ordered that the judgment is modified, on the facts, without costs, by reversing so much thereof as awarded plaintiffs $1.5 million for future pain and suffering; new trial ordered on the issue of said damages unless, within 20 days after service of a copy of the order herein, plaintiff stipulates to reduce said award to $450,000, in which event said judgment, as so modified, is affirmed. [*See* 13 Misc 3d 1225(A), 2006 NY Slip Op 51987(U).]