*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 4, 2014                518120
_____

DAVID VINCENT et al.,
                    Appellants-
                    Respondents,

        v

ANGELO T. LANDI, Individually            MEMORANDUM AND ORDER
    and Doing Business as
    ANGELO'S STEAK AND SEAFOOD
    RESTAURANT,
                    Respondent-
                    Appellant,
                    et al.,
                    Defendant.
_____


Calendar Date:  October 8, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Lynch, JJ.

_____


        Fischer, Bessette, Muldowney & Hunter, LLP, Malone (John J.
Muldowney of counsel), for appellants-respondents.

        FitzGerald Morris Baker Firth, PC, Glens Falls (William A.
Scott of counsel), for respondent-appellant.

_____


Garry, J.

        Cross appeals from an order of the Supreme Court (Demarest,
J.), entered February 22, 2013 in Franklin County, which denied
cross motions by plaintiffs and defendant Angelo T. Landi to set
aside a verdict in favor of plaintiffs.

        In January 2007, plaintiff David Vincent (hereinafter
plaintiff) fractured his ankle when he fell on black ice on a

walkway at Angelo's Steak and Seafood Restaurant, a business owned and operated by defendant Angelo T. Landi (hereinafter defendant) in the Town of Potsdam, St. Lawrence County. Plaintiff and his wife, derivatively, commenced this negligence action against defendant and the owner of the premises.[1] Following a trial, the jury determined that defendant was negligent in maintaining the premises and awarded plaintiff $15,000 as damages for past pain and suffering and $37,526 for past lost business profits, but made no award for future pain and suffering or future lost profits. Following entry of judgment, plaintiffs moved to set aside the jury verdict and for a new trial on the issue of damages, and defendant moved to set aside the verdict. Supreme Court denied the motions. Plaintiffs and defendant cross-appeal from the order denying their motions.

Defendant contends that his motion to set aside the verdict should have been granted because plaintiffs failed to satisfy their burden of proof as to notice. Plaintiffs respond that constructive notice of the icy walkway can be imputed to defendant because the evidence established that he had actual knowledge of an unsafe, recurring condition and failed to take corrective action (see Black v Kohl's Dept. Stores, Inc., 80 AD3d 958, 960 [2011]; Bush v Mechanicville Warehouse Corp., 69 AD3d 1207, 1208-1209 [2010]; see generally Gordon v American Museum of Natural History, 67 NY2d 836, 837-838 [1986]). The testimony established that the weather on the day of the accident was clear, cold and sunny. Snow had fallen the night before, and defendant testified that he shoveled, sanded and salted the walkway in front of the restaurant sometime before noon. Plaintiff and his wife testified that they saw no ice on the walkway when they arrived at the restaurant at about 4:00 in the afternoon, but that by the time they left an hour and a half or two hours later, black ice had formed on it, causing plaintiff to slip and fall.

---

[1] The matter was previously before this Court upon defendant's appeal from the denial of his motion for summary judgment dismissing the complaint against him (101 AD3d 1565 [2012]).

The walkway ran along the front of the restaurant, just below the projecting edge of the sloped, south-facing roof. Defendant testified that he was aware that winter sunlight often melted snow on this roof, causing water to drip from the eaves onto the walkway below, where it would collect and freeze when temperatures dropped later in the day. He confirmed that this condition recurred on a regular basis and that, as a result, he had instructed his employees to check the walkway for ice and to apply sand and salt when necessary. He testified that he had installed an eight-foot-long gutter over the restaurant door to protect it from water running off the roof, but had chosen not to install similar gutters over the walkway. Finally, he stated that he saw snow on the roof on the morning of the accident and knew from his previous experience that this could melt, causing water to drip onto the walkway and later freeze.

A waitress employed by defendant testified that she was aware that meltwater from the roof could create icy conditions and that she had previously seen ice on the walkway that had formed in this fashion. She stated that she arrived at work at about 3:00 p.m. on the day of the accident and saw water running off the roof onto the walkway in the area where plaintiff later fell. She further testified that she assisted plaintiff after the accident, and that she saw black ice on the walkway in the area where he was lying, which she described as "slippery." Viewing this evidence in the light most favorable to plaintiffs, we find a valid line of reasoning and permissible inferences that could have led a rational jury to conclude that defendant had actual knowledge of an unsafe, recurring condition (see Zelaya v Breger, 43 AD3d 437, 439 [2007]; Pugliese v D'Estrada, 259 AD2d 743, 744 [1999]; see also 101 AD3d 1565, 1567 [2012]; Knight v Sawyer, 306 AD2d 849, 849 [2003]; Padula v Big V Supermarkets, 173 AD2d 1094, 1096 [1991]). As to defendant's further contention that the verdict was against the weight of the evidence, we cannot say that the evidence so preponderated in his favor that the jury could not have reached its verdict based on any fair interpretation of the evidence (see Maurer v Tops Mkts., LLC, 70 AD3d 1504, 1506 [2010]; see also Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]; Winter v Stewart's Shops Corp., 55 AD3d 1075, 1077 [2008]).

Next, plaintiffs contend that Supreme Court should have granted their motion to set aside the verdict and directed a new trial on the issue of damages. An award of damages for pain and suffering may be set aside on the ground of inadequacy "when it deviates materially from reasonable compensation for the injury sustained" (Sherry v North Colonie Cent. School Dist., 39 AD3d 986, 990 [2007]; see CPLR 5501 [c]; Hensley v Lawrence, 40 AD3d 1375, 1376 [2007]). Whether such an award is reasonable is determined by analyzing comparable cases, taking into account "the nature, extent and permanency of the injuries, the extent of past, present and future pain and the long-term effects of the injury" (Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d 1253, 1256 [2008], lv denied 11 NY3d 705 [2008]; accord Skelly-Hand v Lizardi, 111 AD3d 1187, 1190 [2013]). Deference is accorded to the jury's damage assessment and to the trial court's decision on a motion to set aside the verdict (see Ciuffo v Mowery Constr., Inc., 107 AD3d 1195, 1198 [2013]; Felitti v Daughriety, 12 AD3d 909, 910 [2004]).

Plaintiff sustained a spiral fracture of the left distal fibula with joint incongruency, described by his treating orthopedic surgeon as a "big, big gap" in the ankle joint where the leg bones had separated from those of the foot and supporting ligaments had been torn. The injury required open reduction surgery and internal fixation with a plate and seven screws. Plaintiff initially required prescription pain medication, wore a fracture boot with instructions to put no weight on his ankle and used a walker and, later, a cane. Six weeks after the accident, the surgeon instructed plaintiff to begin putting weight on his ankle. The surgeon testified that he continued to see plaintiff at frequent intervals during 2007 and 2008, that the fracture and surgical wound healed uneventfully, and that plaintiff's pain improved at first, but then began to worsen. By November 2007, plaintiff was experiencing swelling, limited range of motion and increased pain, especially following certain activities such as walking on uneven ground. The surgeon diagnosed progressive posttraumatic arthritis, a chronic condition that he opined was caused by the accident. During 2008, according to the medical evidence, plaintiff continued to report mild or moderate ankle pain that intensified to more severe levels following overexertion; his surgeon instructed him to avoid activities that

caused pain and administered several cortisone injections into the ankle joint, but ultimately discontinued these injections because they provided only temporary relief. At the time of plaintiff's final visit to his surgeon in December 2008, his pain had improved somewhat, stabilizing at a level described as 3 on a scale of 10. The surgeon testified that no further medical treatment was available at that time; he advised plaintiff to continue to avoid painful activities, and to return if his condition deteriorated.[2]

Plaintiff, who owned and operated a dairy farm, testified that he was able to increase his activities gradually following the accident, as medically directed, but that he continued to experience mild to moderate pain that worsened during daily activities and became "excruciating" upon overexertion. He followed medical instructions to avoid activities that caused pain to the extent that he was able to do so, but his farm responsibilities sometimes required him to engage in activities that increased his pain, such as walking on soft, uneven pasture surfaces. At the time of trial, almost six years after the accident, plaintiff testified that he continued to suffer daily pain that became worse following overexertion, and that he had never been able to resume certain farm tasks that he had performed before the injury, such as milking cows. He had also been forced to discontinue former recreational activities, including bowling and hunting.

The surgeon opined that plaintiff's testimony was consistent with the nature of his injury, stating that his posttraumatic arthritis was permanent and would likely cause pain and limit plaintiff's activities for the rest of his life. Based upon this evidence and our review of comparable damage awards for past pain and suffering involving ankle fractures that required surgery, we find that the award of $15,000 deviates materially from reasonable compensation (see Sherry v North Colonie Cent. School Dist., 39 AD3d at 990-991 [$15,500 was "woefully inadequate" for trimalleolar ankle fracture requiring surgery];

---

[2] Plaintiff was treated by this surgeon on several occasions in 2010 and 2011 for an unrelated condition.

Ordway v Columbia County Agric. Socy., 273 AD2d 635, 636-637 [2000] [award of no damages was unreasonable for bimalleolar ankle fracture dislocation requiring two surgeries]; Carlino v County of Albany, 178 AD2d 772, 773-774 [1991] [$50,000 not excessive for severe ankle fracture requiring surgical correction with residual pain and resulting limitations on activities six years later]; see also Sanchez v Morrisania II Assoc., 63 AD3d 605, 605 [2009] [$100,000 was inadequate for torn rotator cuff and fractured ankle that healed without surgery]; Ruiz v New York City Tr. Auth., 44 AD3d 331, 332 [2007] [award reduced to $100,000 for fractured ankle that required open reduction and fixation]; Hughes v Webb, 40 AD3d 1035, 1037-1038 [2007] [$22,500 was inadequate for tri-plane fracture of the distal tibia requiring open reduction and fixation]; Brandwein v New York City Tr. Auth., 14 AD3d 396, 397 [2005] [award of $30,000 increased to $60,000 for ankle fracture that did not require surgery]).  Based upon our consideration of the damage awards in these cases, we find that a new trial is warranted on this issue unless defendant stipulates to an award of $75,000 for past pain and suffering (see Vogel v Cichy, 53 AD3d 877, 880 [2008]).

We further conclude that the award of no damages for future pain and suffering was inadequate, as there was no evidence from which the jury could have found that plaintiff's condition would improve such that his pain would be completely alleviated (compare Britvan v Plaza at Latham, 266 AD2d 799, 800-801 [1999]).  Plaintiff and the surgeon both testified that the reason that plaintiff ceased his related medical treatment after December 2008 was not that he had fully recovered, but that no further medical treatment was available; no medical evidence was introduced to refute the expert medical opinion that plaintiff's condition was permanent and that he would continue to suffer some level of pain and restriction.  The evidence so preponderated in plaintiffs' favor that this aspect of the verdict could not have been based upon "any fair interpretation of the evidence" (Lolik v Big V Supermarkets, 86 NY2d at 746 [internal quotation marks and citation omitted]; see Hammer v 1111 Ave. K, Inc., 115 AD3d 803, 804 [2014] [$140,000 for future pain and suffering inadequate for dislocated trimalleolar fracture where the plaintiff experienced daily pain and was at risk of developing posttraumatic arthritis]; Grinberg v C&L Contr. Corp., 107 AD3d

491, 492 [2013] [$35,000 was inadequate for a plaintiff who developed permanent arthritis following ankle and leg fractures]; Ruiz v New York City Tr. Auth., 44 AD3d at 332 [$750,000 reduced to $200,000 for ankle injury that caused few limitations and occasional pain treated with over-the-counter medication]; Rivera v Lincoln Ctr. for Performing Arts, Inc., 16 AD3d 274, 274-275 [2005] [$40,000 was inadequate for posttraumatic arthritis following ankle injury]; see also Simeon v Urrey, 278 AD2d 624, 625 [2000] [no award of future pain and suffering damages was inadequate where a plaintiff suffered progressive arthritis, permanent weakness and pain after strenuous exercise following arm fracture]).  Upon our review of these cases, the evidence and plaintiff's estimated life expectancy of 28.2 years at the time of trial, we find that an award of $100,000 for future pain and suffering would be reasonable.

The damage awards for lost profits are likewise unsupported by any fair interpretation of the evidence.  While an injured plaintiff who owns or operates a business may not recover lost profits that were primarily earned through the labor of others or the employment of capital, he or she may recover lost profits that directly result from injuries that prevent the plaintiff from contributing his or her skills, talents or abilities to the business (see Steitz v Gifford, 280 NY 15, 20 [1939]; Behrens v Metropolitan Opera Assn., Inc., 18 AD3d 47, 50 [2005]; PJI 2:295).  The amount of such an award is properly based upon an objective inquiry that the plaintiff must prove "with reasonable certainty" (Tassone v Mid-Valley Oil Co., 5 AD3d 931, 932 [2004], lv denied 3 NY3d 608 [2004]; accord Petrilli v Federated Dept. Stores, Inc., 40 AD3d 1339, 1341-1342 [2007]; see also Kyme v Pantuosco, 35 Misc 3d 1233[A], 2012 NY Slip Op 50984[U], *4 [Sup Ct, Albany County 2012]).  Here, plaintiff testified that he owned and operated the farm on a 50-50 basis with his brother until 2012, and thereafter owned 100% of the business.  He testified that he contributed his own labor to the farm business, that his responsibilities had included daily milking chores before the accident, and that severe pain caused by his injuries prevented him from resuming this task thereafter.  For this reason, he hired an additional worker in 2007 to take over his daily milking, still employed this worker in this capacity at the time of trial, and expected the need for her services to

continue. Plaintiffs submitted tax and business records establishing that the farm had employed four workers before the accident and had added a fifth employee shortly thereafter, at a total cost of $108,035 between 2007 and 2011.

The fifth employee testified that she was hired to milk the cows in 2007 because plaintiff could no longer do so, and that she still worked in that capacity. She and other witnesses confirmed that they had seen plaintiff attempt to milk cows after the accident and that pain had prevented him from doing so. Supreme Court took judicial notice of actuarial tables indicating that plaintiff had a life expectancy of 28.2 years at the time of trial and a remaining working life of 8.7 years. This evidence satisfied plaintiffs' burden of proving with reasonable certainty that the cost of hiring this employee was a direct result of plaintiff's injuries. It further demonstrated that he had lost $54,017.50 – half of the total cost of her employment through 2011, while the farm was jointly owned – as past lost profits, and that he would continue to lose profits for this reason on a 100% basis from 2012, when he assumed sole ownership, through the remainder of his working life (see Duff v Mariani, 248 AD2d 905, 907 [1998]). The jury's award of damages for past lost profits reveals that it accepted plaintiffs' proof that plaintiff's injuries prevented him from contributing his labor to the farm business and resulted in lost profits. The amount of the award, however – less than $54,017.50 in past lost profits and nothing for future lost profits – is inconsistent with this determination and with any fair interpretation of the evidence, as there was no evidence calling the accuracy of plaintiffs' proof into question or suggesting that plaintiff's condition had improved or was expected to improve such that the employment of the fifth worker would become unnecessary (see Cochetti v Gralow, 192 AD2d 974, 975 [1993]; compare Vukovich v 1345 Fee LLC, 72 AD3d 496, 497 [2010]). Contrary to defendant's contention, the fact that the farm's overall profits increased in the years following plaintiff's injury does not foreclose recovery, as the amount of this increase was lessened by the cost of employing the additional worker (see Behrens v Metropolitan Opera Assn., Inc., 18 AD3d at 51). Accordingly, a new trial on this aspect of damages is required unless defendant stipulates to an increase in the damage award for past lost profits to $54,017.50, and an

increase in the award for future lost profits to $203,018.85.[3]

Peters, P.J., Lahtinen, Rose and Lynch, JJ., concur.


ORDERED that the order is modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff David Vincent $15,000 for past pain and suffering, $0 for future pain and suffering, $37,526 for past lost profits and $0 for future lost profits; new trial ordered on the issues of past and future pain and suffering and past and future lost profits unless, within 20 days after service of a copy of the order herein, defendant stipulates to increase the awards for past pain and suffering to $75,000, for future pain and suffering to $100,000, for past lost profits to $54,017.50 and for future lost profits to $203,018.85, in which event said order, as so modified, is affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[3] The award for future lost profits is based upon the average annual cost from 2008 through 2011 of employing the extra worker — who did not work for a full year in 2007 — multiplied by plaintiff's 8.7-year work-life expectancy at the time of trial.