Matter of Fraccaro (2018 NY Slip Op 03198)





Matter of Fraccaro


2018 NY Slip Op 03198


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

525547

[*1]In the Matter of the Estate of ANTONIO FRACCARO, Deceased. ALBERTA ROSS, Respondent; 
A.O. FOX MEMORIAL HOSPITAL, Appellant, et al., Respondent. (And Another Related Proceeding.)

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Getman Law Firm, Oneonta (Michael F. Getman of counsel), for appellant.
Gozigian Washburn & Clinton, Cooperstown (Edward Gozigian of counsel), for Alberta Ross, respondent.
Eric T. Schneiderman, Attorney General, Albany (Kate H. Nepveu of counsel), in his capacity under EPTL 8-1.1 (f).


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from an amended decree of the Surrogate's Court of Otsego County (Lambert, S.), entered March 23, 2017, which, among other things, admitted to probate an instrument purporting to be the last will and testament of decedent.
In October 2012, decedent executed a will that, as pertinent here, provided that his entire estate after satisfaction of his debts was to be given to respondent A.O. Fox Memorial Hospital (hereinafter the hospital). In late January 2015, decedent, who was terminally ill with cancer, was discharged from hospital treatment and moved into a family-type adult home owned and operated by petitioner. Decedent died less than three weeks later. Shortly after his death, respondent Elizabeth McPhail, executor of decedent's estate under the 2012 will, successfully petitioned for preliminary letters testamentary. Petitioner thereafter filed a petition seeking to admit decedent's purported 2015 will to probate; this document provided that she and her husband were to receive 50% of decedent's estate, together with certain personal items. McPhail, [*2]the hospital, and the Attorney General, on behalf of the unknown and ultimate charitable beneficiaries under the wills, moved for summary judgment dismissing the petition, arguing that the 2015 will was not properly executed, decedent lacked capacity, and petitioner had exercised undue influence. Surrogate's Court denied the motions, but held that a confidential relationship existed between petitioner and decedent. Following trial, the jury returned a verdict finding that the 2015 will was duly executed and that decedent was competent and not under undue influence at the time of its execution. McPhail, the hospital, and the Attorney General each moved for judgment notwithstanding the verdict, and the court denied these motions. Surrogate's Court thus issued an amended decree admitting the 2015 will to probate, issuing letters testamentary to petitioner and revoking those issued to McPhail. The hospital appeals.[FN1]
The hospital and the Attorney General similarly argue that the jury's verdict, finding that the 2015 will was duly executed, was not supported by legally sufficient evidence and was against the weight of the evidence. A verdict may be set aside as unsupported by legally sufficient evidence where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; accord Longtin v Miller, 133 AD3d 939, 940 [2015]; see Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d 1253, 1255 [2008], lv denied 11 NY3d 705 [2008]). A jury verdict may be found to be against the weight of the evidence "where the proof so preponderated in favor of the unsuccessful party that the verdict could not have been reached on any fair interpretation of the evidence" (Matter of Grancaric, 68 AD3d 1279, 1280 [2009] [internal quotation marks and citations omitted]; see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]; Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d at 1255).
As pertinent here, before a will may be admitted to probate, "[the court] must be satisfied that the will has been validly executed, 'that the mind of the testator accompanied the act, and that the instrument executed speaks his [or her] language and really expresses his [or her] will'" (Matter of Walker, 124 AD3d 970, 971 [2015], quoting Rollwagen v Rollwagen, 63 NY 504, 517 [1876]; see SCPA 1408 [1], [2]; Matter of Doody, 79 AD3d 1380, 1381 [2010]). The execution of a will requires observance of specific statutory formalities: "the testator must sign the document at the end; the testator must sign or acknowledge the signature in the presence of the attesting witnesses; the testator must declare to each of the attesting witnesses that the instrument is his or her will; and there must be two attesting witnesses who shall, within 30 days, attest the testator's signature and, at the request of the testator, sign their names and affix their residence addresses" (Matter of Lewis, 114 AD3d 203, 211 [2014], affd as mod 25 NY3d 456 [2015]; accord Matter of Walker, 124 AD3d at 971; see EPTL 3-2.1 [a]; Matter of Yen, 127 AD3d 1466, 1466 [2015]). The burden of proving the validity of a purported will lies with its proponent, who must do so by a preponderance of the evidence (see Matter of Walker, 124 AD3d at 972; Matter of Moskowitz, 116 AD3d 958, 959 [2014]).
Here, decedent signed the 2015 will roughly two weeks after entering petitioner's home. He died three days later. The will was entirely handwritten by petitioner, rather than decedent. No attorney was present at the time that the will was executed to assist in meeting the statutory requirements of due execution, set forth in EPTL 3-2.1. Decedent had been acquainted with petitioner prior to entering her home because her daughter had been his mail carrier, but they had [*3]no other prior relationship. Notably, McPhail testified that she had visited decedent the day before he signed the 2015 will, and at that time he explicitly requested that she give petitioner his train sets and televisions for use at the home, with no mention of additional gifts or bequests.
Two attesting witnesses signed the will on the day it was prepared. Petitioner's attorney later prepared attestation affidavits for these witnesses, after decedent's passing, and shortly before petitioner filed her petition. Each of these individuals offered testimony at the trial. The first witness had been living and working at petitioner's home for 28 years. She testified that petitioner called her into decedent's room the morning the will was signed. As part of her duties, this witness had administered oxycodone to decedent roughly 30 minutes before being summoned by petitioner. Decedent had not yet eaten that day. After petitioner left the room, decedent asked this person to witness him signing his will. She could not recall if decedent had his glasses, which he required to read; she testified that she had read the will aloud to decedent. He did not make any movements of his head or body to indicate any sort of approval during the reading, but responded "yes" when she asked if the will was what he wanted.
The second witness had been a resident at the home for seven years and was also petitioner's friend. She similarly testified that decedent had not called her into his room that morning — it may have been either the first witness or petitioner who did so — but decedent had asked her to sign the will. The testimony of this second witness contained multiple inconsistencies, and also conflicted with her deposition testimony in respect to the details surrounding execution. In her deposition testimony, she had stated that the signing occurred in the evening, and she explained that she changed her testimony as to the time of the day after speaking with petitioner. Her testimony was similarly conflicted as to whether petitioner was present at any time during the execution of the will. Ultimately, this second witness stated that she "[did not] remember too much" of that day and that she was confused as to the order in which the will was signed. She also testified that decedent had been a resident at the home for two years, although he had been there roughly two weeks. Although decedent apparently published the 2015 will to the first witness, as described above, the testimony of this second witness failed to indicate in any manner that he had declared to her that the will was his own and reflected his intention, as required by EPTL 3-2.1 (a) (3). The affidavit of attestation subscribed by this second witness fails to remedy this void, in light of her admission that she had not read the affidavit, but that it had merely been "explained" to her (see Matter of Costello, 136 AD3d 1028, 1028 [2016]).
Upon this record, we cannot find legally sufficient evidence to support the jury's verdict finding that the will had been duly executed (see EPTL 3-2.1 [a] [3]; SCPA 1408; Matter of Pulvermacher, 305 NY 378, 385 [1953]; Matter of Yen, 127 AD3d at 1466). Further, the jury's verdict is against the weight of the evidence, as it could not have been reached on a fair interpretation of the evidence (see Rollwagen v Rollwagen, 63 NY at 518; Matter of Falk, 47 AD3d 21, 27-28 [2007], lv denied 10 NY3d 702 [2008]; see also Matter of Walker, 124 AD3d at 972-973).
In light of our determination as to due execution, the parties' remaining contentions have been rendered academic.
Egan Jr., Devine, Aarons and Rumsey, JJ., concur.
ORDERED that the amended decree is reversed, on the law and the facts, without costs, [*4]and petition dismissed.



Footnotes

Footnote 1: The Attorney General submitted a brief in support of the appeal by the hospital. McPhail declined to file a brief upon appeal.