Serrano v State of New York (2020 NY Slip Op 00458)





Serrano v State of New York


2020 NY Slip Op 00458


Decided on January 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 23, 2020

524961

[*1]Juan Serrano, Appellant,
v
State of New York, Respondent.

Calendar Date: December 18, 2019

Before: Garry, P.J., Egan Jr., Aarons, Pritzker and Colangelo, JJ.


Juan Serrano, Ossining, appellant pro se.
Letitia James, Attorney General, Albany (Jennifer L. Clark of counsel), for respondent.



Garry, P.J.
Appeal from an order of the Court of Claims (Hard, J.), entered April 13, 2017, upon a decision of the court in favor of claimant.
Claimant, an inmate at Shawangunk Correctional Facility, was playing softball on an afternoon in May 2011 when he experienced dizziness, shortness of breath and vision disturbances. He was escorted to a medical unit and examined by a nurse at about 8:25 p.m. The nurse noted that claimant complained of discomfort in his left chest and shoulder, but she did not consult a physician or perform an EKG. Claimant was sent back to his cell block with directions to return if pain occurred and to limit exercise until he could be seen by a doctor at a subsequent scheduled appointment. Claimant experienced pain throughout the night and was returned to the medical unit at approximately 1:00 p.m. the next day. An EKG was then performed, and claimant was immediately transferred by ambulance to a nearby hospital. He was treated for a heart attack and remained hospitalized until early June 2011, when he was released to the prison infirmary and later to the general population. Claimant testified that he is required to take several prescribed medications and to be examined at regular intervals by a cardiologist for the rest of his life. No medical restrictions were placed on claimant's activity following his discharge from the hospital, but he testified that he no longer plays sports or lifts weights since his heart attack.
Claimant filed this claim for medical malpractice alleging that defendant failed to properly and timely diagnose his heart attack, thus causing him to experience pain and suffering and resulting in permanent damage to his heart. At the nonjury trial, expert cardiologists testified for both parties based upon their review of claimant's medical records. Following the trial, the Court of Claims found that the testimony of both cardiologists indicated that defendant departed from accepted medical practice by failing to refer claimant to a physician or perform an EKG when he presented with chest and shoulder pain on his first visit to the treatment unit. The court found that claimant would have experienced a better outcome if he had been properly treated at that time and awarded damages in the amount of $15,000 for his past pain and suffering between his first visit to the treatment unit and approximately 3:00 p.m. on the day he was hospitalized. As for future pain and suffering, the court credited the opinion of defendant's expert cardiologist that claimant had suffered no significant permanent damage. The court also credited the opinion of claimant's expert cardiologist that claimant could develop a future arrhythmia, but found that this possibility was too speculative to form the basis of a damage award. Therefore, the court awarded claimant no damages for future pain and suffering. Claimant appeals.
"In reviewing a judgment rendered after a nonjury trial, this Court may independently review the evidence and, while according appropriate deference to the trial court's credibility assessments and factual findings, grant the judgment warranted by the record" (Protect the Adirondacks! Inc. v New York State Dept. of Envtl. Conservation, 175 AD3d 24, 27 [2019] [internal quotation marks, brackets and citations omitted]; see Baba-Ali v State of New York, 19 NY3d 627, 640 [2012]; Fabiano v State of New York, 170 AD3d 1301, 1302 [2019]). A trial court's award of damages for pain and suffering may be set aside when it "deviate[s] materially from what would be reasonable compensation" (Martin v Fitzpatrick, 19 AD3d 954, 958 [2005]; see Benson v Varmette, 121 AD3d 1350, 1351 [2014]). Such awards are "not subject to precise quantification" (Osiecki v Olympic Regional Dev. Auth., 256 AD2d 998, 1000 [1998]; accord
Acton v Nalley, 38 AD3d 973, 976 [2007]; Auer v State of New York, 289 AD2d 626, 629 [2001]). Accordingly, our determination of the reasonableness of a pain and suffering award is based upon an examination of comparable cases and such factors as "the nature, extent and permanency of the injuries, the extent of past, present and future pain and the long-term effects of the injury" (Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d 1253, 1256 [2008], lv denied 11 NY3d 705 [2008]; accord Vincent v Landi, 123 AD3d 1183, 1186 [2014]).
Claimant's appellate arguments are limited solely to the denial of damages for his future pain and suffering, which he asserts is not supported by the record.[FN1] Claimant's expert cardiologist testified that claimant's heart function had returned to normal shortly after the attack, but that a scan taken some months later revealed that he had nevertheless suffered permanent damage to his heart muscle consisting of apical hypokinesis, or weakness of the apical wall of the heart. The cardiologist noted that one of the medications prescribed for claimant was prescribed specifically for such damage to the heart muscle. He stated that claimant's condition was not life-threatening in the short term and that claimant would have a "relatively normal [life] expectancy." However, he opined that the weakness would not improve, that the rest of claimant's heart had to work harder to maintain normal function as a result of this weakness, that the condition could limit certain ranges of activity and that claimant was at risk of developing a future arrhythmia. Defendant's expert cardiologist disagreed, opining that claimant had not experienced any significant permanent injury. Defendant's expert acknowledged that the subsequent scan of claimant's heart showed "minimal" apical hypokinesis and opined that claimant had suffered some permanent damage "on a cellular level . . . [but not] on a global level" and that an autopsy of claimant's heart would reveal a small scar. He opined that claimant had returned to completely normal cardiac function with no restrictions on his physical activity, and that claimant had not suffered "a severe amount of irreversible muscle damage."
We note that the Court of Claims was not required to credit claimant's subjective testimony about the limitations upon his ability to lift weights and participate in sports (see e.g. Vogel v Cichy, 53 AD3d 877, 880 [2008]), and it was entitled to resolve the conflict between the cardiologists' opinions on the permanency of his injury by crediting the testimony of one expert over the other (see e.g. Matter of Rite Aid of N.Y. No. 4928 v Assessor of Town of Colonie, 58 AD3d 963, 964 [2009], lv denied 12 NY3d 709 [2009]). However, the court accepted aspects of both experts' opinions, crediting both the opinion of defendant's expert cardiologist that claimant had suffered no significant permanent damage and simultaneously crediting the opinion of claimant's expert cardiologist that claimant could develop a future arrhythmia because of his injury. As claimant argues, and based upon our review of the record, we find these opinions to be inconsistent with one another. Claimant's cardiologist based his opinion that claimant was at risk of developing a future arrhythmia upon his opinion that claimant had suffered permanent damage to his heart muscle, consisting of weakness that would not resolve with time and that required the rest of his heart to work harder to maintain normal function. As the court noted, claimant's cardiologist did not quantify the degree of potential risk to which he believed claimant was exposed. Nevertheless, in order to accept the opinion that claimant's risk of suffering a future arrhythmia was increased, the court must necessarily also have credited the cardiologist's opinion that claimant had suffered some, albeit limited, degree of permanent injury.
We thus find that the award of no damages for future pain and suffering deviates from reasonable compensation. Our review of the reasonableness of the award of damages under these circumstances is rendered more difficult by the dearth of cases involving similar cardiac injuries. Therefore, we look to other cases in which individuals suffered injuries that resulted in little or no ongoing pain or disability but were permanent in nature and/or increased the individual's risk of potential future complications, to guide the measure of damages (see Richards v Fairfield, 127 AD3d 1290, 1291-1292 [2015] [based upon "unrefuted evidence of some permanence," award of no damages for future pain and suffering increased to $25,000 for the plaintiff who was able to return to employment and all former daily activities after shoulder injury, but experienced some limited range of motion and complained of pain while sleeping and engaging in normal activities]; Vogel v Cichy, 53 AD3d at 880-881 [award of no damages for future pain and suffering for hand injury increased to $20,000 where the trial court could have disregarded the plaintiff's complaints of pain but the unrefuted evidence indicated that the injury was permanent]; Faulise v Trout, 254 AD2d 755, 755 [1998] [award of no damages for future pain and suffering after child was struck by automobile increased to $10,000 where child's right thigh had one inch of atrophy and her right lower extremity was one-quarter inch longer than her left, but the child was not expected to experience any residual disability]; Elsawi v Saratoga Springs City Sch. Dist., 2018 NY Slip Op 31060[U] [Sup Ct, Saratoga County 2018] [award of $75,000 for future pain and suffering unmodified where the plaintiff experienced some unquantified pain and loss of range of motion from shoulder injury and had an unspecified risk of potentially developing traumatic arthritis and requiring future surgery]; Garzon v Batash, 2017 NY Slip Op 32213[U] [Sup Ct, Queens County 2017] [award of future pain and suffering damages reduced from $1 million to $100,000 where the plaintiff experienced "very small" occasional pain after a perforated duodenal diverticulum, suffered no physical complaints or loss of activity but had an unspecified increased risk of future complications such as small bowel obstruction]). We further note claimant's estimated life span of 25 years from the date of his hospitalization in 2011 (see 1B NY PJI3d Appendix A at 1047 [2019]). Following this review, we find and determine that an award of $10,000 for future pain and suffering is reasonable.
Egan Jr., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the facts, without costs, by increasing the award to claimant for future pain and suffering to $10,000, and, as so modified, affirmed.



Footnotes

Footnote 1: Claimant further asserts that the Court of Claims improperly based its decision to award no damages for future pain and suffering, in part, upon the fact that he is serving a lengthy prison term. We reject this assertion. Although the court briefly referenced claimant's incarceration and sentence at the beginning of its decision, as part of the background of the incident, the subsequent discussion regarding damages was based solely on the medical evidence, with no further references to his incarceration.